Case No. 22-14136
# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

On Appeal from Case No. 3:16-cv-00407-BJD-JRK
United States District Court for Middle District of Florida Jacksonville Division

AMERISURE INSURANCE COMPANY and
AMERISURE MUTUAL INSURANCE
COMPANY,

      Plaintiffs-Appellees,

v.

LANDMARK AMERICAN INSURANCE
COMPANY, et. al.

      Defendant-Appellant.

_____/

## APPELLANT LANDMARK AMERICAN INSURANCE COMPANY'S INITIAL BRIEF

      Landmark American Insurance Company ("Landmark" or "LAIC"), by and through undersigned counsel, hereby submits its Initial Brief in this matter.

Dated:     February 22, 2023       By: _/s/ **Spencer Mallard**_

                                     D. Spencer Mallard, Esq.
                                     (FL Bar # 26497)
                                     Jeremy W. Harris, Esq.
                                     (FL Bar # 41131)
                                     LYDECKER LLP
                         1221 Brickell Avenue, 19th Floor
                                       Miami, FL 33131
                                        sm@lydecker.com
                                       jharris@lydecker.com
                                     Tel: (305) 416-3180
                                     Fax: (305) 416-3190

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

## I.  <u>Landmark's Disclosure Statement as Required by Rule 26.1</u>

Pursuant to Federal Rule of Appellate Procedure 26.1(a) and Eleventh Circuit Rules 26.1-1 through 26.1-3, Appellant, Landmark American Insurance Company et al. ("Landmark"), submits the following:

1) A complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

- Amerisure Insurance Company, Appellee
- Amerisure Mutual Insurance Company, Appellee
- Arch Insurance Company, defendant
- Emerson & Elder, PC, counsel for Appellees
- FCCI Insurance Company
- Goodman McGuffey LLP, counsel for FCCI Insurance Company and National Trust Insurance Company
- Landmark American Insurance Group, Appellant
- Lewis Brisbois Bisgaard & Smith LLP, counsel for Arch Insurance Company
- Lydecker LLP, Counsel for Appellant Landmark American Insurance Company
- National Trust Insurance Company
- RSUI Group, Inc.
- RSUI Indemnity Company
- Rywant, Alvarez, Jones, Russo & Guyton, P.A., counsel for Amerisure
- Seth Victon Alhadeff, counsel for Arch Insurance Company
- Anthony N. Balice, counsel for Appellees
- Robert M. Darroch, counsel for FCCI Insurance Company and National Trust Insurance Company
- Honorable Brian J. Davis, United States District Judge
- Todd R. Ehrenreich, counsel for Arch Insurance Company
- Donald E. Elder, Counsel for Appellees
- Kathryn Lee Ender, counsel for Arch Insurance Company

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

- Brian S. Goldenberg, counsel for Arch Insurance Company
- Rachel L. Harman, counsel for FCCI Insurance Company and National Trust Insurance Company
- Jeremy Wayne Harris, counsel for Appellant Landmark American Insurance Company
- Dana Spencer Mallard, counsel for Appellant Landmark American Insurance Company
- Brett L. Warning, counsel for Appellees

2) The name of every other entity whose publicly-traded stock, equity, or debt may be substantially affected by the outcome of the proceedings:

None other than those identified in Paragraph 1 above.

3) The name of every other entity which is likely to be an active participant in the proceedings, including the debtor and members of the creditors' committee (or twenty largest unsecured creditors) in bankruptcy cases:

None other than those identified in Paragraph 1. In addition, there are no bankruptcy cases known to Landmark that includes any entity or individual that is likely to be an active participant in the proceedings.

4) The name of each victim (individual or corporate) of civil and criminal conduct alleged to be wrongful, including every person who may be entitled to restitution:

None known to Landmark.

LYDECKER LLP
1221 Brickell Avenue · 19th Floor · Miami · Florida 33131 · (305) 416-3180

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

## II.    <u>**Table of Contents**</u>

I.    Landmark's Disclosure Statement as Required by Rule 26.1……………2

II.    Table of Contents……………………………………………………....4-5

III.    Table of Authorities……………………………………………...6-10

IV.    Landmark's Jurisdictional Statement…………………………....……11

V.    Landmark's Statement of the Issues Presented for Review…………....12

VI.    Facts and Procedural History…………………………………………13

      The Underlying Action and the Relevant Insurance Policies……………13
      This Action and the Relevant Orders…………………………………16
      The EIFS exclusion………………………………………………...18
      Equity Allegations…………………………………………………... 20
      Occurrence Allegations…………………………………………………23
      The Unbriefed and Unrequested $5,997,827.20………………………...24

VII.    Summary of the Argument…………………………………………...29

VIII.    Argument……………………………………………...……………33

      1.    Standard of Review for all Issues…………………………………...33
      2.    Choice of Law…………………………………………………………33
      3.    Landmark's EIFS Exclusion Defeats the Duty to Defend and the Duty
            to Indemnify………………………………………………………...34
            a.  The Duty to Defend…………...……………………………...34
            b.  The Duty to Indemnify…………………..……………………...42

      4.    The Equitable Exception to the Duty to Defend……………………44

      5.    The Duty to Indemnify…………………………………………….48
            a.  "Property Damage" …………………………………………48
            b.  "Occurrence" and Limits of Insurance………………………54

      6.    The Unrequested $5,997,827.20……………………………………61
7.    Attorneys' Fees……………………………………………………64

LYDECKER LLP
1221 Brickell Avenue · 19th Floor · Miami · Florida 33131 · (305) 416-3180

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

IX.    Relief Sought and Oral Argument Request……………..……………..66

X.    Landmark's Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements……………………………………………………………67

LYDECKER LLP
1221 Brickell Avenue · 19th Floor · Miami · Florida 33131 · (305) 416-3180

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

## III.      Table of Authorities

*AIX Specialty Ins. Co. v. Members Only Management, LLC*,
793 Fed. Appx. 1001  (11th Cir. 2019)……………………………………………40

*Alea London Limited v. American Home Services, Inc., 638 F.3d 768, 773-74 and*
*779-81 (11th Cir. 2007)…………………………………………………….….63*

*Allstate Insurance Company v. Adrianna Luu*,
2017 WL 5573025 (N.D. Ga. 2017)……………….…………………………………50

*All Underwriters v. Weisberg*, 222 F.3d 1309, 1311 (11th Cir. 2000)……………65

*American Cas. Co. of Reading v. Belcher*,
709 Fed. Appx 606 (11th Cir. 2017)…………………………………………………40

*American Cas. Co. of Reading, Pa. v. Superior Pharmacy, LLC*,
86 F.Supp.3d 1307 (M.D. Fla. 2015) …………………………………………......42

*Am. Safety Indem. Co. v. T.H. Taylor, Inc.*, 513 F. App'x 807 (11th Cir. 2013)…….33

*Arrow Exterminators, Inc. v. Zurich Am. Ins. Co.*, 136 F. Supp. 2d 1340 (N.D. Ga.
2001) ………………………………………………………………...54 and 56

*Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29 (Fla. 2000)………………….…39

*Auto Owners Ins. Co. v. Gay Construction Co.*, 332 Ga.App. 757 (2015)…....51-2

*Barrs v. Auto-Owners Insurance Company, 564 F.Supp.3d 1362, 1375-77 (M.D. Ga.*
*2021)……………………………………………………………………….….49*

*BBG Design Build, LLC v. S. Owners Ins. Co.*,
820 F. App'x 962(11th Cir. 2020)…………………………………………….....33

*Berkley Ass. Co. v. Expert Group International, Inc.*,
779 Fed. Appx. 604 (11th Cir. 2019)…………………………………………………40

*BITCO Nat. Ins. Co. v. Old Dominion Ins. Co.*, 379 F.Supp.3d 1230
 (N.D. Fla. 2019)(reconsideration denied by *BITCO Nat. Ins. Co. v.*
*Old Dominion Ins. Co.*, 2019 WL 3855321 (N.D. Fla. 2019) …………...34, 38-41

LYDECKER LLP
1221 Brickell Avenue · 19th Floor · Miami · Florida 33131 · (305) 416-3180

*Bituminous Cas. Corp. v. Northern Ins. Co. of New York*,
 249 Ga. App. 532, 548 S.E.2d 495 (2001)…………………………………...…36

*Bradfield v. Mid-Continent Cas. Co.*,
143 F. Supp. 3d 1215 (M.D. Fla. 2015)……………………………………………35

*Byars v. Coca-Cola Co.*, 517 F.3d 1256, 1264 (11th Cir. 2008)……………..……62

*Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240 (11th Cir. 2015)……....…48, 53

*Certain Interested Underwriters at Lloyd's, London v. AXA Equitable Life Ins. Co.*,
32 F.Supp.3d 1226 (S.D. Fla. 2014)…………………………………………......42

*Composite Structures, Inc. v. Continental Insurance Company*,
560 Fed. Appx. 861 (11th Cir. 2014)……………………………………………45

*Composite Structures, Inc. v. Cont'l Ins. Co.*,
903 F.Supp.2d 1284, 1290 (M.D. Fla. 2012)……………………………...…42

*David R. Farbstein, P.A. v. Westport Insurance Corp.*,
2017 WL 3425327 (S.D. Fla. 2017)…………………………………….....…44

*Diamond State Ins. Co. v. Boys' Home Association, Inc.*,
172 F.Supp.3d 1326 (M.D. Fla. 2016)……………………………………......44

*Elrod's Custom Drapery Workshop v. Cincinnati Ins. Co.*,
187 Ga.App. 670 (1988)…………………………………………………...…50

*Elan Pharm. Research Corp. v. Emp'rs Ins. Of Wausau*,
144 F.3d 1372 (11th Cir. 1998)…………………………………………………45

*Empire Fire and Marine Ins. Co. v. Span, 2021 WL 2255127 (S.D. Fla. 2021)*……45

*Endurance American Specialty Ins. Co. v. Morris Hardwick Schneider, LLC*,
2018 WL 8263067, (N.D. Ga. 2018)………………………………………...40

*Evanston Ins. Co. v. Littlejohn*, 2017 WL 6373992 (N.D. Ga. 2017)………….40, 45

*Federal    Rules    of    Appellate    Procedure,*    Rules    3    and
4…………………………………...………………………….…......11

*Federal Rules of Civil Procedure,* Rule 54, 56, and 58
………………………………………………………….....................…11

*First Coast Energy, LLP v. Cincinnati Ins. Co.*
227 F.Supp.3d 1282 (M.D. Fla. 2017)……………………..……….42, 43, 50, 56

*First Mercury Ins. Co. v. Miller Roofing Enters,*
Case No. 2:11cv105, 2013 WL 662970 (W.D. Wash. Feb. 22, 2013)……………...38

*Federal Ins. Co. v. Applestein*, 377 So.2d 229 (Fla. 3rd DCA 1979)………...….....42

*Feldman v. Imperium Ins. Co.*, 2015 WL 5854153 (M.D. Fla. 2015)…………...…44

*Florida Statutes* § 627.428……………………………………………………64-5

*Florida Statutes* § 786.79…………………………………………………………64-5

*Fun Spree Vacations, Inc. v. Orion Ins. Co.*,
659 So.2d 419 (Fla. 3rd DCA 1995) ……………………………………………42

*G&A Family Enterprises, LLC v. American Family Insurance Company, 2021 WL*
*1947180 at 6 (N.D. Ga. 2021)……………………………………………………...FN1*

*Geovera Specialty Ins. Co. v. Hutchins*,
831 F.Supp.2d 1306 (M.D. Fla. 2011)…………………………………..……42

*Henning Construction Co., LLC v. Phoenix Insurance Co., 570 F.Supp.3d 670, 679-*
*81 (S.D. IA 2021)……………………………………………………………34, 38*

*Georgia Statutes* § 33-4-6……………………………………………………65

*Gentry Machine Works Inc. v. Harleysville Mutual Insurance Co.*, 621 F.Supp.2d
1288 (M.D. Ga. 2008)…………………………………………………………..51

*Higgins v. State Farm Fire & Cas. Co.*, 894 So.2d 5 (Fla. 2005)…………………..45

*IDC Const., LLC v. Admiral Ins. Co.*, 339 F.Supp.2d 1342 (S.D. Fla. 2004)………43

*Imaging Business Machines, L.L.C. v. Bantec, Inc., 459 F.3d 1186 (11th Cir.*
*2006)…………………………………………………………………………...62*

*Jones v. Florida Ins. Guar. Ass'n, Inc.*, 908 So.2d 435 (Fla. 2005)………………35

LYDECKER LLP
1221 Brickell Avenue · 19th Floor · Miami · Florida 33131 · (305) 416-3180

*J.P.F.D. Investment Corp. v. United Specialty Ins. Co.*, 769 Fed. Appx. 698 (11th Cir. 2019)………………………………………………...…………….65

*Maxxum Indem. Co. v. Jiminez*, 734 S.E.2d 499 (Ga. Ct. App. 2012)……………...50

*Menchise v. Akerman Senterfitt*, 532 F.3d 1146 (11th Cir. 2008)…………………65

*Meritage Homes of Georgia, Inc. v. Grange Ins. Co., 528 F.Supp.3d 1312 (N.D. Ga. 2021)*…………………………………………………………………....…43, 49

*Metropolitan Life Ins. Co. v. Tucker*, 2021 WL 531302 (11th Cir. 2021)………….33

*Mid-Continent Casualty Co. v. Royal Crane, LLC,*
169 So.3d 174 (Fla. 4th DCA 2015)…………………………………………………35

*Middlesex Ins. Co. v. Dixie Mechanical, Inc.,*
2022 WL 4484615 (N.D. Ga. 2022)…………………………………………………49

*Morgan Concrete Company v. Westerfield Ins. Co.,*
2021 WL 755094 (11th Cir. 2021)…………………………………………...……48

*National Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So.2d 533 (Fla. 1977)…..35

*Owners Insurance Company v. Robertson, 2023 WL 146245 (N.D. Ga. 2023)*…………………………………………………...……………………..43

*Pacific Emp'rs Ins. Co. v. Cesnik*, 219 F.3d 1328 (11th Cir. 2000)………………...45

*Penn-America Ins. Co. v. Disabled American Veterans, Inc.,*
268 Ga. 564, 490 S.E.2d 374 (1997)…………………………………………………36

*Philadelphia Indemnity Ins. Co. v. Florida Memorial Univ.,*
2018 WL 1737641 (S.D. Fla. 2018)………………………………..………………42

*Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc.,*
595 F.Supp.2d 1319 (S.D. Fla. 2009)……………….……………………………42

*Sapp v. State Farm Fire & Cas. Co.*, 226 Ga. App. 200,(1997)……………...…51

*Sinni v. Scottsdale Ins. Co.*, 676 F.Supp.2d 1319 (M.D. Fla. 2009)………………..45

*Southern-Owners Insurance Company v. A to Z Gulfcoast Services, LLC, 2022 WL17326901 (M.D. Fla. 2022)*…………………………………………...…42

LYDECKER LLP
1221 Brickell Avenue · 19th Floor · Miami · Florida 33131 · (305) 416-3180

*State Auto Prop. & Cas. Co. v. Matty*, 690 S.E. 2d 614 (Ga. 2010)……………....…59

*Steadfast Insurance Company v. The Celebration Source, Inc.*,
240 F.Supp.3d 129 (S.D. Fla. 2017)……………………………………………45

*Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318 (11th Cir. 2014)………...33, 44

*St. Paul Fire & Marine Ins. Co. v. Ohio Cas. Ins. Co.*,
2014 WL 1285824 (D. Ariz. Mar. 28 2014)…………………………...37, 38, 40

*Taylor Morrison Servs., Inc. v. HDI-Gerling Am. Ins. Co.*,
746 S.E.2d 587 (2013)……………………………………………………........ 49

*Trailer Bridge, Inc. v. Ill. Nat'l Ins. Co.*, 657 F.3d 1135 (11th Cir. 2011)…………42

*Transportation Ins. Co. v. Piedmont Const. Group, LLC*,
301 Ga.App. 17 (2009)…………………………………………………....…51-52

*Travelers Property Cas. Co. of America v. Continental Cas. Co.*, 226 F.Supp.3d
1359 (N.D. Ga. 2017)………………………………………….…………… 59

*Travelers Property Cas. Co. of America v. Salt 'N Blue, LLC*,
731 Fed. Appx. 920 (11th Cir. 2018)…………………………………………40

*Trehel Corp. v. Owners Ins. Co.* 2014 WL 11820250 (N.D. Ga. 2014)……….49, 52

*Trovillion Const. & Development, Inc. v. Mid-Continent Cas. Co.*, 2014 WL 201678
(M.D. Fla. 2014)…………………………………………………………..35

*Western Surety Co. v. Steuerwald*, 760 Fed.Appx. 810 (11th Cir. 2019)…………..33

*Yeager v. Advanced Disposal Services Alabama, LLC*, 2022 WL 17998532 (11th
Cir. 2022)………………………………………………………………62

LYDECKER LLP
1221 Brickell Avenue · 19th Floor · Miami · Florida 33131 · (305) 416-3180

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

## IV.   **Landmark's Jurisdictional Statement**

Landmark would state that the District Court had diversity jurisdiction over this litigation pursuant to 28 U.S.C. § 1332 and this Court has appellate jurisdiction pursuant to *Federal Rules of Appellate Procedure, Rules 3 and 4* and pursuant to *Federal Rules of Civil Procedure, Rules 54, 56, and 58*.

LYDECKER LLP
1221 Brickell Avenue · 19th Floor · Miami · Florida 33131 · (305) 416-3180

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

## V.    <u>Landmark's Statement of the Issues Presented for Review</u>

(1) Does the EIFS Exclusion Found in the Landmark Policies Bar Coverage?

(2) Does the Equitable Exception to the Duty to Defend Bar Coverage?

(3) Does the Window Repair Constitute "Property Damage" under the Landmark Policies?

(4) Was there an Occurrence under the Landmark Policies and, if so, were Both Landmark Policies Implicated?

(5) Was Amerisure Entitled to Amounts Awarded in the Final Judgment that were never Briefed by any Party and never requested in any Motion for Summary Judgment?

(6) Was Amerisure Entitled to Attorneys' Fees?

LYDECKER LLP
1221 Brickell Avenue · 19th Floor · Miami · Florida 33131 · (305) 416-3180

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

## VI.    **Facts and Procedural History**

### The Underlying Action and The Relevant Insurance Policies

1.      Riverside Avenue Partners, Ltd. ("RAP"), as the owner of the property located at 501 Riverside Avenue, Jacksonville, Florida, contracted with Auchter, as a general contractor, to construct a 13-story commercial office building known as Everbank Plaza ("Project"), with construction beginning on July 14, 2005. [D.E. 24 at ¶¶5-7; D.E. 24 at ¶21; D.E. 24-1, at page 33].

2.      Auchter and TSG Industries, Inc. ("TSG") entered into a subcontract, dated June 15, 2006, for TSG to perform work at the Project ("Subcontract") related to the installation of the glass and glazing and curtain wall system at the Project. [D.E. 65-2, at page 2]; [D.E. 24, at page 7, ¶22]; and [D.E. 65-2, at page 7].

3.      Arch issued to Auchter a performance bond for the Project.  [D.E. 51, at ¶10].

4.      RAP filed the Underlying Action in 2010 against Arch and Auchter alleging, among other things, defective construction of the Project. [D.E. 24, at ¶¶2, 40]. Further, it was alleged that TSG's work on the exterior of the Project was deficient. [D.E. 65-2, pgs. 2, 7, and 8]. Both of RAP's operative complaints attached a copy of the contract between RAP and Auchter (the "Prime Contract"). [D.E. 75-2, at p.2] and [D.E. 65-1, at ¶6].

LYDECKER LLP
1221 Brickell Avenue · 19th Floor · Miami · Florida 33131 · (305) 416-3180

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

5.      Arch and Auchter filed a third-party complaint against TSG and other subcontractors, seeking to recover amounts attributable to each entity's alleged defective work. [D.E. 24, at page 14, ¶42] and [D.E. 65-3]. Arch and Auchter alleged that TSG breached its Subcontract by performing work that was incomplete, defective, and that it failed to remedy defective and improper work. [*Id.*, at ¶41.]

6.      The Underlying Action resulted in a Final Judgment that was entered on November 5, 2014. [D.E. 24, at ¶45; D.E 24-1, at pages 3, 88]. The Final Judgment contained an award of $5,067,033.01 in favor of Arch for repair of the windows (the "Window Repair"). [D.E. 24-1, at pages 82-83].

7.      On or about August 27, 2015, Arch and RAP entered into a Settlement Agreement, Mutual Release and Assignment of Claims ("Settlement Agreement") thereby satisfying all amounts due and owing to RAP pursuant to the Final Judgment in the Underlying Action, inclusive of prejudgment interest. [D.E. 51, at page 24].

8.      Amerisure issued two CGL Policies (there were also umbrella policies) to Auchter bearing policy number GL 2009278 and which were effective from January 1, 2006 to January 1, 2007, and from January 1, 2007 to January 1, 2008. [D.E. 24-13; D.E. 24-14].

9.      TSG Industries, Inc. ("TSG") is the named insured under the LAIC Policy No. LHA103911 issued from 1/22/2006 to 1/22/2007 (the "2006 LAIC Policy"). [D.E. 65-6]. TSG is also the named insured under LAIC Policy No.

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

LHA104850 issued from 1/22/2007 to 1/22/2008 (the "2007 LAIC Policy"). [D.E. 65-7]. The 2007 LAIC Policy was cancelled effective 11/1/07. [*Id.*] The 2006 LAIC Policy and the 2007 LAIC Policy shall be referred to collectively as the "LAIC Policies." The LAIC Policies contain the following relevant insurance provisions (the provisions themselves are not being reproduced herein for space purposes):

a.   Both Landmark Policies have an "Each Occurrence Limit" of $1,000,000. [D.E 65-6, at page 3] and [D.E. 65-7, at page 3].

b.   Definition of occurrence [D.E. 65-6, at page 19] and [D.E. 65-7, at page 19].

c.   The insuring provisions-Both Landmark Policies provided that: (b) This insurance applies to 'bodily injury' and 'property damage' only if: (2) The 'bodily injury' or 'property damage' occurs during the policy period…" [D.E. 65-6, at page 6] and [D.E. 65-7, at page 6].

d.   The Additional Insured provisions [D.E. 65-6, at page 28] and [D.E. 65-7, at page 30].

e.   The Other Insurance provisions [D.E 65-6, at page 16] and [D.E. 65-7, at page 16].

f.   The Limits of Insurance Sections [D.E. 65-6, Page 15] and [D.E. 65-7, at page 15].

i.   The EIFS Exclusions [D.E. 65-6, at page 32] and [D.E. 65-7, at page 34].

j.   The Business Risk Exclusions [D.E. 65-6, at pages 9-10] and [D.E. 65-7, at pages 9-10]

10.   Auchter is not a specifically named insured on either of the LAIC Policies.

LYDECKER LLP
1221 Brickell Avenue · 19th Floor · Miami · Florida 33131 · (305) 416-3180

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

11.     Both of the LAIC Policies were delivered to Georgia. [D.E. 65-6] and [D.E. 65-7].

12.     The relevant Amerisure policies were apparently delivered to Florida. [D.E. 201-7].

13.     Amerisure provided Auchter a defense in the Underlying Action. [D.E. 24, at page 14].

<u>This Action and the Relevant Orders</u>

14.     Amerisure filed this action on October 23, 2015 against various parties, including Landmark and Arch.  All three parties filed claims against each other either disclaiming coverage (Amerisure and Landmark) or claiming that the other parties should provide coverage (Amerisure and Arch).  [D.E. 24].  [D.E. 51].  [D.E. 55].

15.     The parties all filed multiple summary judgment motions against each other on these issues, culminating in no less than nine summary judgment orders, orders relating to the substitution of parties and the entering of a final judgment, and a final judgment that are at issue in this appeal.  Those orders are as follows:

    a.     Order on Landmark American Insurance Company's Motion for Summary Judgment on the EIFS Exclusion Dated March 30, 2017. [D.E. 157].

    b.     Order on Amerisure's Motion for Partial Summary Judgment against Landmark dated March 30, 2017. [D.E. 158].

    c.     Order on Amerisure's Motion for Summary Judgment against Arch dated September 27, 2017. [D.E. 191].

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

d.    Order on Arch's Motion for Partial Summary Judgment against Amerisure and Amerisure's Cross-Motion for Partial Summary Judgment against Arch dated March 27, 2018. [D.E. 216].

e.    Order on Amerisure's Motion for Partial Summary Judgment against Landmark dated September 27, 2018. [D.E. 267].

f.    Order on Amerisure Motion for Reconsideration and Reversal of Order on Cross Motions for Partial Summary Judgment; Amerisure's Motion to Bar the Expert Opinions and Testimony of Steven C. Shimp at Trial; Amerisure's Motion for Partial Summary Judgment against Landmark; Amerisure's Motion for Partial Summary Judgment against Arch regarding Claims for Insurance Coverage for the "Punch List" and "Delay Damage" Components of the Final Judgment; Landmark's Motion for Summary Judgment on the Duty to Defend and the Duty to Indemnify Related to the Equitable Exception; Landmark's Motion for Summary Judgment on the Duty to Indemnify; Amerisure's Objections to the Magistrate Judge's Non-Dispositive Order; and Amerisure's Motion for the Entry of a Partial Final Summary Judgment against Landmark dated February 14, 2019. [D.E. 292].

g.    Order on Amerisure's Motion for Reconsideration and Modification of this Court's Order Granting in part Landmark's Motion for Summary Judgment dated March 19, 2020 dated March 19, 2020. [D.E. 307].

h.    Order on Landmark's Motions for Reconsideration dated December 22, 2020. [D.E.321].

i.    Docket Order 335, Granting Amerisure and Defendant Arch Insurance Company's Motion for Extension of Time to Submit a Final Judgment and directing only Amerisure and Defendant Arch Insurance Company to submit a proposed final judgment. [D.E. 335].

j.    Order Granting Amerisure and Defendant Arch Insurance Company's Joint Unopposed Motion for Substituting of Parties; Dismissing Defendant Arch Insurance Company from this action; Granting in Part Plaintiffs and Defendant Arch Insurance Company's Proposed Final Judgment; Denying Defendant Landmark's Motion to Strike the Proposed Final Judgment and for Sanctions; Denying as Moot

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

Defendant Landmark's Motion for Leave to File a Reply Brief. [D.E. 342].

k.  Judgment in a Civil Case dated November 17, 2022. [D.E. 343]. The Judgment awards the following damages in favor of Amerisure and against Landmark:

- $1,208,593.34 under a duty to defend TAC in the Underlying Action;
- $364,554.19 interest on the $1,208,593.34;
- $2,000,000.00 as Landmark's "sum of the policy limits under Landmark's commercial general policy numbers LHA103911 and LJA104850" on a duty to indemnify theory;
- $728,602.68 interest on the $2,000,000.00; and
- "An award of $5,997,827.20 in favor of Plaintiffs and against Defendant LAIC for Defendant Arch Insurance Company's attorney's fees and costs, as enumerated in <u>Arch Ins. Co. Auchter Co.</u>, Case. No. 2015-CA-5022, Doc. 107 (Fla. Duval Cnty. Ct. Mar. 27, 2017)."

<u>The EIFS Exclusion</u>

16.  The LAIC Policies contain an EIFS exclusion that provides:

EXCLUSION- EIFS
(Endorsement No.: 04)

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE FORM OWNERS CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM PRODUCTS COMPLETED OPERATIONS LIABILITY COVERAGE FORM

This Insurance does not apply to "bodily injury", "property damage", or "personal and advertising Injury" included in the "products-completed operations hazard" and arising out of "your work" or "your product" shown In the SCHEDULE.

SCHEDULE
Description of "your work":
1. The design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement of an "exterior insulation and finish

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

system" (EIFS) commonly referred to as synthetic stucco or any part thereof, of any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in conn action with such system.

2. Any work or operations with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system" is used in any part of that structure.

3. Any damages arising out of or related to "bodily injury", "property damage" or "personal and advertising injury" arising out of paragraphs 1. and/or 2. above, whether such "bodily injury", "property damage" or "personal and advertising Injury" Is known or unknown which: a. First occurred prior to the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier); or b. Are, or alleged to be, in the process of occurring as of the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier) even if the "occurrence" continues during this policy period.

4. Any damages arising out of or related to "bodily injury", "property damage" or "personal and advertising injury" whether known or unknown, which are in the process of settlement, adjustment or "suit" as of the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier). For the purpose of this endorsement, an "exterior insulation and finish system" means an exterior cladding or finish system used on any part of any structure, and consisting of any or all of the following: a. A rigid or semi-rigid insulation board made of expanded polystyrene or other materials, b. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate, c. A reinforced base coat, d. A finish coat providing surface texture and color.

We shall have no duty to defend any insured against any loss, claim, "suit", or other proceeding alleging damages arising out of or related to "bodily injury", "property damage" or "personal and advertising injury" to which this endorsement applies.

[D.E. 65-6, at page 32] and [D.E. 65-7, at page 34].

17.    The Prime Contract makes clear that EIFS is being utilized on the

project. [D.E. 75- 2, at pages 83, 90]. The first citation refers to a schedule of values

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

with EIFS having a specific dollar amount contributed to it. [D.E. 75-2, at page 83].

The second citation is a table of "Master Drawing List and Specifications," and

"Exterior Insulation and Finish System" is listed under "Thermal and Moisture

Protection" with a drawing date of June 13th, 2005. [D.E. 75-2, at page 90]. Florida

Rule of Civil Procedure Rule 1.130(b) provides that exhibits attached to a pleading

"shall be considered part thereof for all purposes."

18.     The Final Judgment in the underlying action makes clear that EIFS was

utilized on the project and was constructed in a defective manner. [D.E. 24-1, at ¶¶

60- 63].

19.     TSG's scope of work was solely on the exterior of the property.

Specifically, TSG was the glass/glazing subcontractor responsible for installation of

the curtain wall. [D.E. 65-2, at pages 2, 7, and 8].  [D.E. 24-1, at page 16, ¶5].  [D.E.

93, at ¶4].

20.     Arch and Auchter's Amended Third Party Complaint acknowledged

TSG's scope of work and attached a copy of TSG's Subcontract. [D.E. 65-3, at page

7].

<u>Equity Allegations</u>

21.     RAP filed its Amended Complaint on March 8, 2012. [D.E. 65-1]. The

RAP Amended Complaint had the following relevant allegations:

14. On or about December 25, 2006, the Project suffered substantial
water damage from rainstorms: Water intrusion occurred through the

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

roof, window and curtain wall systems, which damaged ongoing tenant improvements being performed by tenant improvement contractors. At that time Auchter had still not made the building substantially watertight.

15. Auchter failed to promptly clean up the water damage following the December 25, 2006 water intrusion. Instead, Auchter allowed water to collect and gather in the building offices, causing the water to wick up into the drywall and inflict additional damage to ongoing tenant improvements.

…

19. Auchter eventually made the building substantially watertight during the Spring of 2007, although the building remained incomplete

…

22. After Auchter finally completed the building envelope and many tenants had assumed occupancy, the Project experienced additional leaks and water intrusion due to defective construction. On September 17, 2007 substantial water damage occurred to the tenant space of RAP's anchor tenant, Everbank, making portions of the space unusable. Water intrusion at various locations continued during rain events through 2007 and 2008.

22.     The RAP Amended Complaint only refers specifically to water coming into/through the windows related to the December 25, 2006 water intrusion event.

23.     Amerisure knew as early as June of 2010 that the December 25, 2006 water intrusion event was covered by RAP's builder's risk policy. [D.E. 65-25, at page 2]. RAP's insurer paid the damages for this event and RAP never was entitled to seek damages for the event. [D.E. 75-4].

24.     As the District Court noted in its March 30, 2017 Order denying Amerisure's previous motion for summary judgment: "[s]ubsequent allegations (referencing 14-16 above) do not specify the windows as the cause. Additionally,

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

the allegations appear to relate to events that occurred after TSG was completed. *Id.*

at 6 (RAP Amended Complaint ¶ 22).” [D.E. 158, at page 41].

25.    Amerisure’s sent Auchter a letter entitled “Reservation of Rights

regarding possible lack of coverage” dated June 24, 2010. [D.E. 65-25, at page 7].

This letter contains the following sentence:

> Amerisure has further knowledge that damages associated with the
> December 25, 2006 water intrusion were handled by Zurich, the
> builders’ risk carrier on the project.

26.    Landmark’s investigation revealed that RAP’s builder’s risk insurer

Zurich paid $104,032.00 for damages caused by the December 2006 water intrusion

event. [D.E.75-4].

27.    The December 25, 2006 water intrusion event occurred while TSG’s

work was not done and the building was not dried in. [D.E. 249-1, Pages 16-17].

28.    Mr. Lunetta “testified that rental concessions and the cost of

replacement of stained ceiling tiles and wet carpet were not included in RAP’s list

of damages presented in the Underlying Lawsuit.” [D.E. 216, at page 14].

29.    Arch’s expert acknowledged that the window repair contemplated in

the judgment contains only amounts to repair TSG’s work and to access TSG’s work.

[D.E. 250, Pages 18-19].

30.    The punch list had nothing to do with TSG’s work. [D.E. 249-1, Pages

8-9 and 36-93].

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

Occurrence Allegations

31.    Both Landmark Policies provide that:

SECTION III-LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of: a. Insureds; b. Claims made or 'suits brought;

[…]

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

[D.E. 65-6, at page 15] and [D.E. 65-7, at page 15].

32.    The first page of the 2007 LAIC Policy makes clear that is a renewal of the 2006 LAIC Policy. [D.E. 65-7, at page 2]. The 2006 LAIC Policy had a policy number of LHA103911. [D.E. 65-6, at page 2]. The 2007 LAIC Policy had a policy number of LHA104850, and says on the first page, entitled "COMMON POLICY DECLARATIONS," "POLICY NO. LHA104850 RENEWAL OF LHA103911."

33.    The email string at D.E. 121-7 at page 24 (cited by the District Court) does not discuss additional leaks beyond the December 25, 2006 water intrusion event.

34.    The very next page of the email string, D.E. 121-7 at page 25, is instructive, as this page contains a January 12, 2007 email from Paul Lunetta that provides in relevant part:

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

Dear Bob: Thank you for your letter of January 2, 2007, regarding the water intrusion issue. […] On a site visit Wednesday, January 10th, among other things, we observed numerous penetrations in the roof from construction debris, other roof penetrations not completely flashed, clogged roof drains and lack of flashings. Why are roofer not on site to complete the roof, which appears to be far from being completed? Further the window openings should be protected while the correct glass size is shipped from the manufacturer. The penetrations in the roof and window openings should be remedied immediately to prevent further damage to the building and interior buildout. […] (Emphasis added).

## The Unbriefed and Unrequested $5,997,827.20

35.    On May 20, 2021, Amerisure and Arch filed a Joint Notice of Partial Resolution of Claims and Request for an Extension of Time to Submit a Proposed Final Judgment with Incorporated Memorandum of Law. [D.E. 334].

36.    On May 24, 2021, the District Court entered its Docket Order 335, Granting Amerisure and Arch's Motion for Extension of Time to Submit a Final Judgment and directing only Amerisure and Arch to submit a proposed final judgment. [D.E. 335].

37.    On June 28, 2021, Amerisure and Arch filed a Joint Unopposed Motion for Substitution of Parties and Incorporated Memorandum of Law. [D.E. 336].  This motion argued that Amerisure and Arch had reached a settlement, and that Arch had assigned its claims to Amerisure as part of the settlement.  [D.E. 336]

38.    On July 8, 2021, Landmark filed its Response to the Joint Unopposed Motion for Substitution of Parties and Incorporated Memorandum of Law, in which

LYDECKER LLP
1221 Brickell Avenue · 19th Floor · Miami · Florida 33131 · (305) 416-3180

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

Landmark stated that it "does not object to the Joint Motion in so much as Amerisure's intent is to immediately submit proposed final judgments related to the orders that have already been entered against LAIC so that LAIC may proceed with its appeal of those orders." [D.E. 337].

39.     On July 12, 2021, Amerisure and Arch filed a Notice of Filing Proposed Final Judgment. [D.E. 338]. This Proposed Final Judgment included an overall award in favor of Amerisure against Landmark (without fees) of $13,074,924.83.

40.     On July 13, 2021, Landmark filed its Motion to Strike Notice of Filing Proposed Final Judgment and Accompanying Proposed Final Judgment [D.E. 338], Motion for Sanctions for Misleading the Court and Disclosing Settlement Communications, and Alternative Proposed Final Judgment. [D.E. 339]. This motion argued that Amerisure had submitted a proposed final judgment seeking $8.7 million dollars that had never been addressed by the Court or requested by any party in a motion for summary judgment. [D.E. 339].

41.     This Motion to Strike further argued that the Court's latest substantive order was issued on December 22, 2020, which order denied Landmark's remaining motions for reconsideration. In that December 22, 2020 order, the District Court stated that "**The Court finds all issues concerning Landmark have been decided.**" There was no pending motion between Amerisure and Arch requesting

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

the $8.7 million against each other or, and more importantly, against Landmark. [D.E. 339].

42.    This Motion to Strike argued that the orders cited in the Proposed Final Judgment for the $8.7 million, [D.E. 160, 267, 292, 307 and 321], revealed "absolutely no support for the award of nearly $9,000,000.00 in damages against LAIC in favor of anyone." [D.E. 339].

43.    On July 27, 2021, Amerisure filed is Response with Incorporated Memorandum of Law to Landmark's Motion to Strike. [D.E. 340]. Here, Amerisure argued, for the very first time, that the new amounts requested were "fees and costs awarded against Auchter are covered under LAIC's Policies – outside of the policies' limits – as Supplementary Payments following a predicate of coverage." [D.E. 340]. Amerisure pointed to Initial Disclosures and Status Updates were Arch discussed these amounts, but pointed to no motion (motion for summary judgment or otherwise) where any party requested these amounts from LAIC under any theory. [D.E. 340].

44.    On July 29, 2021, Landmark requested leave to file a reply brief to Amerisure's response (as required by local rules). [D.E. 341].

45.    Over 15 months later, on November 16, 2022, the District Court entered its Order Granting Amerisure and Defendant Arch Insurance Company's Joint Unopposed Motion for Substituting of Parties; Dismissing Defendant Arch

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

Insurance Company from this action; Granting in Part Plaintiffs and Defendant Arch Insurance Company's Proposed Final Judgment; Denying Defendant Landmark's Motion to Strike the Proposed Final Judgment and for Sanctions; Denying as Moot Defendant Landmark's Motion for Leave to File a Reply Brief. [D.E. 342]. This Order also granted entitlement to attorneys' fees to Amerisure. [D.E. 342].

46.    The November 16, 2022 Order ultimately awards $5,997,827.20 in fees awarded to Arch against  as the "Court has already determined that Defendant LAIC 'owed a primary **duty to defend Auchter** in the underlying state court action with [Plaintiffs] providing excess coverage to [Auchter] vis-à-vis the Landmark policies.' (Doc. 267 at 28)."

47.    The District Court relied on a Summary Final Judgment in Favor of Arch against Auchter in the <u>Arch Insurance Company v. The Auchter Company</u>, Case. No. 2015-CA-5022, Doc. 107 (Fla. Duval Cnty. Ct., March 17, 2017) in reaching this result, where that court specifically awarded Arch "$5,997,347.40 for Arch's attorney's fees and costs incurred in the Underlying Action…" *Id*. at page 4.

48.    The District Court specifically held that the $5,997,347.40 were incurred "by Defendant Arch…**in defense of Defendant Auchter Company** in the 2010 case." [D.E. 342 at pages 9-10].

49.    The next day the District Court entered Final Judgment, providing that "An award of $5,997,827.20 in favor of Plaintiffs and against Defendant LAIC **for**

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

**Defendant Arch Insurance Company's attorney's fees and costs**, as enumerated

in <u>Arch Ins. Co. Auchter Co.</u>, Case. No. 2015-CA-5022, Doc. 107 (Fla. Duval

Cnty. Ct. Mar. 27, 2017)." [D.E. 343].

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

## VII.  **Summary of the Argument**

Landmark presents six arguments in this appeal.

First, Landmark would state that there is an EIFS exclusion in the Landmark Policies, and this exclusion barred both the duty to defend and the duty indemnify. The exclusion provides that when there is EIFS (a type of synthetic stucco) on the exterior of a building, and the insured works on the exterior of the building, no duty to defend or indemnify lies.  Those are the facts here.

The District Court rejected this argument, holding that the exclusion was illusory.  However, this seemed based on a misunderstanding between the differences of EIFS and Stucco.  Additionally, another Florida district court (the Northern District) has reviewed substantially the same provision and determined it not to be illusory and to be enforceable as it relates to the duty to defend.  Landmark asks this Court to resolve the split among the district courts in favor of enforcing the EIFS exclusion.

Second, Landmark seeks to rely on an equitable exception on the duty to defend where the Court is allowed to look outside of the four corners of the pleadings and insurance policies (the usual boundaries of the duty to defend analysis) when there is an undisputed fact that was not pled and, if it was, would take the matter out of the duty to defend.  Here, there is but one allegation in the entirety of the pleadings that specifically identifies windows as a source of water intrusion-a water intrusion

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

event that occurred on December 25, 2006. However, the owner's builder's risk insurance policy paid for any damages related to this event and Amerisure and others expressly knew this. With this one event of alleged window leaks being paid for by another insurer, Landmark (and its insureds) would have no duty to indemnify for that same event. As the Landmark Policies only requires a duty to defend to "property damage" which this insurance applies, and the Landmark Policies could not apply to the December 25, 2006 event, no duty to defend existed.

Third, Landmark would state that under Georgia law, the $5,000,000 Window Repair, which repaired solely TSG's scope of work, is not "property damage" under the Landmark Policies. To be clear from the start, there is literally no amount awarded in the Final Judgment, in the Window Repair amount or otherwise, for damages caused by water intrusion through the windows. There was evidence of past leaks, and the court found in the Final Judgment that the windows had to be fixed in order to avoid future water intrusion-but no damages were ever sought or awarded for actual damage to other property.

Fourth, Landmark would state that if there was "property damage" under the Landmark Policies, that there was no "occurrence" under either policy. If the "property damage" is the Window Repair or the past water intrusion (the District Court never made this completely clear), that "property damage" did not occur during Landmark's policies and in fact occurred years later. Finally, even if there

LYDECKER LLP
1221 Brickell Avenue · 19th Floor · Miami · Florida 33131 · (305) 416-3180

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

was an occurrence, there can only be one occurrence and only one of the Landmark

Policies can be implicated.

Fifth, the unrequested, unbriefed $5,997,827.20 should be disallowed as it

essentially amounts to the District Court making a summary judgment ruling against

Landmark-without providing Landmark notice and opportunity to respond to the

same.

Sixth, the attorneys' fees award, which was also not briefed at the conclusion

of this matter, should be disallowed as the District Court apparently relied on Florida

law to decide the same and Georgia law would not provide for fees in this matter.

The arguments set forth above (and hence below), at least the first four

arguments, are presented in a purposeful order.  Namely, each argument should be

considered in order, and if the Court agrees with Landmark on the given argument,

then the next section is likely rendered moot.  For example, if the Court agrees the

EIFS exclusion bars the duty to defend, then it also bars the duty to indemnify and

the equitable exception to the duty to defend becomes unimportant, as does any

analysis of "property damage" and an "occurrence."  If the Court does not agree with

Landmark on the EIFS exclusion, then it must analyze the equitable exception to the

duty to defend, which would also defeat the duty to indemnify.  If the Court believes

there was a duty to defend, then an analysis of the Window Repair and "property

damage" will be necessary, and only if the Court determines the Window Repair was

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

"property damage" will the Court have to review arguments related to an "occurrence."

The sixth argument, entitlement to attorneys' fees, follows this logic and should only be considered if some amount is being awarded to Amerisure under a duty to defend or indemnify theory.

The fifth argument is a bit of an odd man out. Certainly if there is no duty to defend and indemnify, this amount should not be awarded. While the other arguments may flow, under no circumstances should Landmark be forced to pay $6,000,000.00 that Landmark was never allowed to brief.

This order of argument is not meant to suggest importance of argument. In fact, out of the issues on appeal, Landmark would state that the District Court's rulings on "property damage" and "occurrence" represent broad, and improper, expansions of this Circuit's prior rulings on these same subjects.

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

## VIII. <u>Argument</u>

### 1. <u>STANDARD OF REVIEW FOR ALL ISSUES</u>

Appellate courts review a district court's ruling on a motion for summary judgment *de novo*, viewing the record and drawing all reasonable inference in light most favorable to the non-moving party. *Stephens v. Mid-Continent Cas. Co., 749 F.3d 1318, 1321 (11th Cir. 2014)*; *Am. Safety Indem. Co. v. T.H. Taylor, Inc.*, 513 F. App'x 807, 809 (11th Cir. 2013); *BBG Design Build, LLC v. S. Owners Ins. Co.*, 820 F. App'x 962, 963 (11th Cir. 2020).  Further, the interpretation of provisions in an insurance contract is a question of law and is also reviewed *de novo. Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014).

### 2. <u>CHOICE OF LAW</u>

Landmark's Policies were delivered into Georgia. [D.E. 65-6] and [D.E. 65-7]. Amerisure's Policies were delivered into Florida. [D.E. 201-7].  Georgia adheres to the doctrine of *lex loci contractus.  Metropolitan Life Ins. Co. v. Tucker*, 2021 WL 531302 at 1 (11th Cir. 2021).  Florida does the same.  *Western Surety Co. v. Steuerwald*, 760 Fed.Appx. 810, 815-16 (11th Cir. 2019).  While the parties below, including Landmark, cited Florida and Georgia law, Landmark would state that to the extent there is a conflict, Georgia law should apply.

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

### 3. LANDMARK'S EIFS EXCLUSION DEFEATS THE DUTY TO DEFEND AND THE DUTY TO INDEMNIFY

#### a. The Duty to Defend

Landmark owed no duty to defend Auchter and the District Court erred in holding otherwise. Landmark moved for summary judgment below on an EIFS (a type of synthetic stucco) exclusion and the District Court denied the motion, holding the exclusion to be illusory. [D.E. 157]. Months later, a Northern District of Florida court interpreted the same (or nearly the same) exclusion and held that it barred the duty to defend and expressly held the exclusion was not illusory. *See BITCO Nat. Ins. Co. v. Old Dominion Ins. Co.*, 379 F.Supp.3d 1230, 1239-44 (N.D. Fla. 2019). This split in the district courts should be resolved in favor of the Northern District because its order is more soundly reasoned and unlike this District Court's order, was not based on a misunderstanding of what constitutes stucco versus EIFS. Indeed, at least one district court has already sided with *BITCO* and distinguished the District Court below. *Henning Construction Co., LLC v. Phoenix Insurance Co.*, 570 F.Supp.3d 670, 679-81 (S.D. IA 2021).

Both of the LAIC Policies have an EIFS Exclusion cited in full at paragraph 16 in the "Facts and Procedure" section above. [D.E. 65-6, at page 32] and [D.E. 65-7, at page 34]. The EIFS exclusion expressly provides that LAIC "shall have no duty to defend any insured against any loss, claim, 'suit', or other proceeding alleging damages arising out of or related to 'bodily injury', 'property damage' or

'personal and advertising injury' to which this endorsement applies." The pleadings in the Underlying Action made clear that all necessary elements of the exclusion were met.

An insurer's duty to defend arises solely from "the facts and legal theories alleged in the pleadings and claims against the insured." *Mid-Continent Casualty Co. v. Royal Crane, LLC*, 169 So.3d 174, 180 (Fla. 4th DCA 2015). "The general rule in Florida is that an insurance company's duty to defend an insured is determined solely from the allegations of the complaint when compared to the insurance policy's terms and conditions." *Bradfield v. Mid-Continent Cas. Co.*, 143 F. Supp. 3d 1215,1231 (M.D. Fla. 2015)(*citing Jones v. Florida Ins. Guar. Ass'n, Inc.*, 908 So.2nd 435, 443 (Fla. 2005) and *National Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So.2d 533, 536 (Fla. 1977)). If the complaint alleges facts that potentially bring the suit within coverage provided by the policy, then the insurer must provide a defense to the action. *Id*. The duty to defend is greater than the duty to indemnify, and the insurer must defend even if the allegations in the complaint are incorrect or meritless. *Id*. Moreover, if the complaint alleges facts that are within coverage and facts that are outside coverage, the insurer must provide a defense to the entire lawsuit. *Id*. Additionally, for an insurer to deny a defense based on a policy exclusion, the complaint against the insured must allege facts clearly bring the entire case within the exclusion. *Trovillion Const. & Development, Inc. v. Mid-Continent*

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

*Cas. Co.*, 2014 WL 201678 at 4(M.D. Fla. 2014). Georgia law does not conflict with Florida law on this. The issue in deciding whether an insurer is obliged to defend an action against its insured is not whether the insured is actually liable to the plaintiff, but whether a claim has been asserted that falls within the policy coverage and that the insurer has a duty to defend. *See, Bituminous Cas. Corp. v. Northern Ins. Co. of New York*, 249 Ga. App. 532, 548 S.E.2d 495 (2001). The liability insurer's duty to defend is excused only when a complaint unambiguously excludes coverage under the policy, and, thus, the duty to defend exists if the claim potentially comes within the policy. *See Penn-America Ins. Co. v. Disabled American Veterans, Inc.*, 268 Ga. 564, 490 S.E.2d 374 (1997).

There is no dispute of fact that EIFS was utilized on the Project, which the Prime Contract, as an exhibit to and part of the pleadings in the Underlying Action, makes clear. The Prime Contract has a schedule of values specifically assigning a dollar amount to EIFS/Stucco and a table of drawings and specifications attached to the Prime Contract has a specific reference to the use of "Exterior Insulation and Finish System". See, [D.E. 75- 2, at pages 83,90]. These drawings and specifications are incorporated into the work that made up the project, according to the Prime Contract. [Doc. 75-2, at pages 52-53]. There is further no dispute of fact that TSG's scope of work was entirely limited to the exterior of the project as the subcontractor responsible for installing the windows/curtain wall system. [D.E. 65-2, at pages 2,

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

7, and 8]. [D.E. 65-3, at page 7]. The EIFS exclusion applies and LAIC had no duty to defend because of it.

The District Court held that the EIFS exclusion was not enforceable, believing that the exclusion was illusory (and disagreeing in a footnote that the pleadings in the Underlying Action brought the matter within the exclusion). [D.E. 157, at pages 40-41 and FN 16]. In determining that the EIFS exclusion was illusory, the District Court largely relied on *St. Paul Fire & Marine Ins. Co. v. Ohio Cas. Ins. Co.*, 2014 WL 1285824 (D. Ariz. Mar. 28, 2014).

However, *St. Paul Fire & Marine Ins. Co. v. Ohio Cas. Ins. Co.* is a case where the insurance carrier attempted to construe an EIFS exclusion to apply to the application of stucco. *Id*. at 1-2. Specifically, instead of applying the exclusion to EIFS as it is understood in the construction industry, the carrier attempted to include traditional stucco within the definition of EIFS. *Id*. at 5-6. *St. Paul Fire & Marine Ins. Co. v. Ohio Cas. Ins. Co.* cited case law that described EIFS as an alternative to stucco and how EIFS is different than stucco and EIFS had developed a bad reputation related to water infiltration. *Id*. at 6-8. The court noted that the carrier knew that 99% of the insured business was stucco, and that an interpretation of the EIFS exclusion to include stucco would "gut the coverage ostensibly granted." *Id*. at 9-12. It was that fact pattern, the carrier knowing its insured's business was 99% stucco while also believing (and later arguing) that an EIFS exclusion applied to

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

stucco was unconscionable. *Id*. at 12-13. There is absolutely nothing in *St. Paul Fire & Marine Ins. Co. v. Ohio Cas. Ins. Co.* that would support the notion that an EIFS exclusion applied as worded when EIFS is present is unenforceable.

On March 30, 2019, the Northern District of Florida published *BITCO Nat. Ins. Co. v. Old Dominion Ins. Co.*, 379 F.Supp.3d at 1239-44, which interpreted a similar EIFS exclusion in a CGL policy and determined the same was enforceable, not illusory, and barred the duty to defend.  S*ee also Henning Construction Co., LLC v. Phoenix Insurance Co.*, 570 F.Supp.3d 670, 679-81 (S.D. IA 2021)(*citing BITCO* and distinguishing the District Court below to uphold an EIFS exclusion). The EIFS Exclusion at issue in *BITCO* case "states that the insurance does not apply to, inter alia, property damage arising out of: (1) the installation or application of an EIFS; or (2) the insured's work 'with respect to any exterior component, fixture or feature of any structure if an [EIFS] is used on any part of the structure." *Id*. at 1241.

The Northern District held that:

> To date, no Florida court has analyzed the scope of an EIFS exclusion in a CGL policy. However, numerous federal district courts have found that EIFS exclusions materially identical to the instant exclusion "clear[ly]" and "unambiguous[ly]" barred coverage for damage resulting from defective work performed on the exterior of a building if EIFS was used on any part of the building, even where the insured's work did not in any way come into contact with EIFS. *See Amerisure Insurance Co. v. Auchter Co.*, Case No. 3:16cv407, 2017 WL 3584896, *23 (M.D. Fla. Mar. 30, 2017) (collecting cases); *see also First Mercury Ins. Co. v. Miller Roofing Enters.*, Case No. 2:11cv105, 2013 WL 662970, at *2-4 (W.D. Wash. Feb. 22, 2013). The Court agrees with this plain language reading of Crum's EIFS Exclusion. *See Auto-*

38

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

*Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000) ("Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties."). There is no ambiguity here.

*Id*. at 1241-42.

The *BITCO* Court applied the EIFS exclusion to the allegations in the complaint, found that EIFS was used on exterior soffits and ceilings throughout the project, and the insured's work only involved exterior components of the project (it was responsible for tasks related to roofing), and that paragraph 2 of the exclusion therefor precluded coverage for any of the insureds allegedly defective work. *Id*.

In *BITCO Nat. Ins. Co. v. Old Dominion Ins. Co.*, the insured also argued that the EIFS exclusion was illusory and inherently unreasonable. 379 F.Supp.3d 1242. The court reviewed Florida law[1] and Eleventh Circuit law as it relates to exclusions being illusory and rejected that argument. *Id*. at 1242-43. Instead of swallowing up coverage, the court held the EIFS exclusion:

> only precludes coverage for a small subset of claims-those arising from West Coast Metal's work on the exterior of a building on which there is EIFS. *See id*. 39-40. While this is a significant exclusion (at least as applied in this case), it does not render the policy nonsensical or completely contradict the insuring provisions. Indeed, the policy still affords coverage for claims arising from West Coast Metal's work on the exterior of buildings without EIFS and to its work on a building's interior.

---

[1] Georgia law does not have a case interpreting EIFS exclusions. However, under Georgia law, a policy can only be illusory when it results in a complete lack of any policy coverage. *G&A Family Enterprises, LLC v. American Family Insurance Company*, 2021 WL 1947180 at 6 (N.D. Ga. 2021).

LYDECKER LLP
1221 Brickell Avenue · 19th Floor · Miami · Florida 33131 · (305) 416-3180

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

*Id.* at 1243.

*See also AIX Specialty Ins. Co. v. Members Only Management, LLC*, 793 Fed. Appx. 1001, 1004 (11th Cir. 2019); *Berkley Ass. Co. v. Expert Group International, Inc.*, 779 Fed. Appx. 604, 612 (11th Cir. 2019); *Travelers Property Cas. Co. of America v. Salt 'N Blue, LLC*, 731 Fed. Appx. 920, 925 (11th Cir. 2018); *American Cas. Co. of Reading v. Belcher*, 709 Fed. Appx 606, 610 (11th Cir. 2017); *Endurance American Specialty Ins. Co. v. Morris Hardwick Schneider, LLC*, 2018 WL 8263067, 5-6 (N.D. Ga. 2018)(holding under Georgia law an exclusion is not illusory when it does not completely nullify coverage in the main policy); and *Evanston Ins. Co. v. Littlejohn*, 2017 WL 6373992, 6-7 (N.D. Ga. 2017)(holding under Georgia law an exclusion is not illusory when the exclusion does not completely nullify coverage).

Unlike *St. Paul Fire & Marine Ins. Co. v. Ohio Cas. Ins. Co.*, Landmark does not seek to enforce an EIFS provision onto stucco applications of a stucco installer. Instead, like *BITCO Nat. Ins. Co. v. Old Dominion Ins. Co.*, Landmark seeks to enforce an EIFS exclusion when the exterior of the building contained EIFS and when the insured was a subcontractor that only did work on the exterior. In *BITCO Nat. Ins. Co. v. Old Dominion Ins. Co.,* the subcontractor did work solely on the roof and in this case TSG solely did work on the windows/curtainwall system.

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

When all of this was argued to the District Court in a motion for reconsideration, the District Court held that the EIFS exclusion in *BITCO* "contained differences that arguably made the *BITCO* clause broader than the one at issue in this case." [D.E. 321, Page 4]. The District Court did not explain these "differences", and Landmark submits there is no material difference between the EIFS exclusion before this Court and the EIFS exclusion construed in *BITCO* (both apply when the subcontractor does work on the exterior of the project and there is EIFS on the exterior of the project). The exclusions are the same and the *BITCO* order provides a more well-reasoned analysis that this Court should adopt.

The District Court also held that the subcontractor's work in *BITCO* was more closely associated with EIFS than the subcontractor's work in *BITCO*. This finding, which the District Court again does not explain, is belied by the *BITCO* court's acknowledgement that "numerous federal district courts have found that EIFS exclusions materially identical to the instant exclusion 'clear[ly]' and 'unambigous[ly] barred coverage for damage resulting from defective work performed on the exterior of a building if EIFS was used on any party of the building, even where the insured's work did not in any way come into contact with EIFS." *Id.* at 1241-42. It has always been Landmark's contention that the EIFS Exclusion does not require that EIFS caused the damage and that the only link to EIFS be that EIFS

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

is on the exterior of the building and the subcontractor's work similarly be on the

exterior of the building.  Both of these facts are present here.

      b.  <u>The Duty to Indemnify</u>

If this Court agrees there is no duty to defend because of the EIFS exclusion,

then this appeal is functionally over, and an opinion should be issued in favor of

Landmark on all claims.  This is because if there is no duty to defend, there is no

duty to indemnify. *Southern-Owners Insurance Company v. A to Z Gulfcoast*

*Services, LLC,* 2022 WL17326901 at 4 (M.D. Fla. 2022); *Certain Interested*

*Underwriters at Lloyd's, London v. AXA Equitable Life Ins. Co.*, 32 F.Supp.3d 1226,

(S.D. Fla. 2014); *see also, Trailer Bridge, Inc. v. Ill. Nat'l Ins. Co.*, 657 F.3d 1135,

1146 (11th Cir. 2011); *Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo*

*Ass'n, Inc.*, 595 F.Supp.2d 1319 (S.D. Fla. 2009); *Geovera Specialty Ins. Co. v.*

*Hutchins*, 831 F.Supp.2d 1306 (M.D. Fla. 2011). S*ee, Philadelphia Indemnity Ins.*

*Co. v. Florida Memorial Univ.*, 2018 WL 1737641 at 3 (S.D. Fla. 2018)(*citing*

*Philadelphia Indemnity Ins. Co. v. Yachtman's Inn Condo Ass'n, Inc.*, 595 F.Supp.2d

1319, 1322 (S.D. Fla. 2017); *American Cas. Co. of Reading, Pa. v. Superior*

*Pharmacy, LLC*, 86 F.Supp.3d 1307, (M.D. Fla. 2015)(*citing Composite Structures,*

*Inc. v. Cont'l Ins. Co.*, 903 F.Supp.2d 1284, 1290 (M.D. Fla. 2012)(*quoting Federal*

*Ins. Co. v. Applestein*, 377 So.2d 229, 233 (Fla. 3rd DCA 1979)); *Fun Spree*

*Vacations, Inc. v. Orion Ins. Co.*, 659 So.2d 419, 422 (Fla. 3rd DCA 1995); *First*

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

*Coast Energy, LLP v. Cincinnati Ins. Co.*, 277 F.Supp.3d 1282, (M.D. Fla. 2017)(applying Georgia law for the proposition that "if there is no duty to defend, then there is no duty to indemnify."); *Meritage Homes of Georgia, Inc. v. Grange Ins. Co.*, 528 F.Supp.3d 1312, 1319 (N.D. Ga. 2021); and *Owners Insurance Company v. Robertson*, 2023 WL 146245 at 2-3 (N.D. Ga. 2023).

   If the Court believes the EIFS exclusion does not bar the duty to defend, it should still hold that the exclusion bars any amounts under the duty to indemnify, including the Window Repair. "In contrast to the duty to defend, the duty to indemnify is dependent upon the entry of a final judgment, settlement, or a final resolution of the underlying claims by some other means." *IDC Const., LLC v. Admiral Ins. Co.*, 339 F.Supp.2d at 1349. "Unless the insured can demonstrate that it suffered a covered loss under the policy, the insurer has no duty to indemnify." *Id*. The Final Judgment in the underlying action makes clear that EIFS was utilized on the project and was constructed in a defective manner. [D.E. 24-1, at ¶¶60-63]. The Final Judgment determined that Auchter subcontracted the window walls, curtain walls, and storefront windows to TSG. [D.E. 24-1, at page 16, ¶5]. Just as argued in the previous section, there is no dispute of fact, and the EIFS Exclusion should be enforced.

LYDECKER LLP
1221 Brickell Avenue · 19th Floor · Miami · Florida 33131 · (305) 416-3180

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

### 4. THE EQUITABLE EXCEPTION TO THE DUTY TO DEFEND

The complaint in the Underlying Action only details one specific water intrusion event through the windows. This event, which occurred on December 25, 2006 (when TSG's work was not finished), was covered by the owner's builder's risk policy. Had those simple facts been pled, it would have been clear on the face of the pleadings that Landmark had no duty to defend anyone under the 2006 policy. This equitable argument defeats any claim that the 2006 policy created a duty to defend on behalf of Landmark. A review of the Underlying Action's operative pleading also defeats any claim that the 2007 policy created a duty to defend, as there is no other allegation about water intrusion through the windows.

In addition to the duty to defend case law cited in the section related to the EIFS exclusion, Florida[2] courts will consider extrinsic evidence when analyzing the duty to defend in "special circumstances" in which "extrinsic 'facts are undisputed, and, had they been pled in the complaint, they clearly would have placed the claims outside the scope of coverage.'" *David R. Farbstein, P.A. v. Westport Insurance Corp.*, 2017 WL 3425327 at 6-7 (S.D. Fla. 2017)(*citing Feldman v. Imperium Ins. Co.*, 2015 WL 5854153 at 8 (M.D. Fla. 2015) (*quoting Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1323-24 (11th Cir. 2014)); *see also, Diamond State Ins.*

---

[2] Landmark points to Florida law on this issue, as Georgia law is silent on this exception.

LYDECKER LLP
1221 Brickell Avenue · 19th Floor · Miami · Florida 33131 · (305) 416-3180

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

*Co. v. Boys' Home Association, Inc.*, 172 F.Supp.3d 1326, 1339-40 (M.D. Fla. 2016)(*citing Higgins v. State Farm Fire & Cas. Co.*, 894 So.2d 5 (Fla. 2005) for the proposition that there are "'natural exceptions' to the principal that the obligation to defend is determined solely by the claimant's complaint 'where an insurer's claim that there is no duty to defend is based on factual issues that would not normally be alleged in the complaint.'"; *Steadfast Insurance Company v. The Celebration Source, Inc.*, 240 F.Supp.3d 1295, 1302-03 (S.D. Fla. 2017); *Composite Structures, Inc. v. Continental Insurance Company*, 560 Fed. Appx. 861, 865-66 (11th Cir. 2014); *Sinni v. Scottsdale Ins. Co.*, 676 F.Supp.2d 1319, 1323 (M.D. Fla. 2009); and *Empire Fire and Marine Ins. Co. v. Span*, 2021 WL 2255127 at 3-5 (S.D. Fla. 2021). Georgia law also provides that the court should compare the "allegations of the complaint, **as well as the facts supporting those allegations**, against the provisions of the insurance contract," when analyzing the duty to defend. *Evanston Ins. Co. v. Littlejohn*, 2017 WL 6373992 at 5-6 (N.D. Ga. 2017)(*citing Pacific Emp'rs Ins. Co. v. Cesnik*, 219 F.3d 1328, 1330 (11th Cir. 2000)(*quoting Elan Pharm. Research Corp. v. Emp'rs Ins. Of Wausau*, 144 F.3d 1372, 1375 (11th Cir. 1998)).

The exception relied upon by LAIC is narrow and LAIC does not seek an extension of it beyond what the law already provides. LAIC is asking this Court to do just as the exception provides-review extrinsic undisputed evidence to determine if that undisputed fact, if pled, would place the Underlying Action out of coverage

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

for the 2006 LAIC Policy. The December 25, 2006 water intrusion allegation is the only place RAP's Amended Complaint "specify the windows as the cause" of water intrusion. [D.E. 158, at page 41]. It is undisputed that RAP submitted the December 25, 2006 water intrusion event to its builder's risk insurer and that the builder's risk insurer paid RAP on that claim. [D.E. 75-4]. Amerisure has been aware of this fact since at least June of 2010. [D.E. 65-25, at page 7]. This fact takes the Underlying Action out of coverage as to the 2006 LAIC Policy. Both of the LAIC Policies provide: [w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this Insurance does not apply. [D.E. 65-6, at page 6] and [D.E. 65-7, at page 6]. If Auchter or TSG was not legally obligated to pay for the December 25, 2006 water intrusion event, then it is not something that could create a duty to defend. The LAIC 2006 Policy was effective from 1/22/2006 to 1/22/2007. Without the December 25, 2006 water intrusion allegations, there is nothing in RAP's complaint that could even arguably trigger the LAIC 2006 Policy.

This leaves only the 2007 LAIC Policy, which was issued from 1/22/2007 to 1/22/2008 (the "2007 LAIC Policy"). [D.E. 65-7]. The 2007 LAIC Policy was

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

cancelled effective November 1, 2007. [D.E. 75-1]. It is clear that the December 25, 2006 water intrusion allegation is the only place RAP's Amended Complaint specifies the windows as the cause of water intrusion. [D.E. 158, at page 41]. Without this, and without something alleging damage to other property through the windows, there is nothing that would create coverage/a duty to defend under the 2007 LAIC Policy.

And as stated in the section related to the EIFS exclusion, if there is no duty to defend, there is no duty to indemnify.

The District Court rejected this argument, holding that "Zurich may have paid for the claim for a number of reasons, including mistake."  [D.E. 292, at page 8]. Additionally, the District Court believed that "Zurich's payment does not necessarily implicate Landmark's legal duty to defend." *Id*.  Without an explanation for why, the District Court held that "[t]o interpret so broadly the exception … would swallow the general rule …" Id.   However, Zurich's reasoning for paying for the December 25, 2006 event is not important.  So long as payment was made, then the December 25, 2006 water intrusion event was not something Auchter or TSG could be liable for and the Landmark Policies would not apply.

LYDECKER LLP
1221 Brickell Avenue · 19th Floor · Miami · Florida 33131 · (305) 416-3180

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

5. THE DUTY TO INDEMNIFY

    a. "Property Damage"

Regardless of the state law applied (Florida or Georgia), it was error for the District Court to determine that the Window Repair constituted covered "property damage" under a commercial general liability policy. This is because the entire amount of the Window Repair was to repair the actual window themselves and no amount was sought or awarded for damages to other property. The District Court initially held under Florida law (and against Amerisure) that the Window Repair was covered "property damage." [D.E. 216]. Landmark moved for summary judgment and argued that while it believes the District Court erred under Florida law, that an analysis of Georgia law should lead to a different result. The District Court rejected this argument, and while admitting that its prior order on "property damage" was under Florida law (with specific reliance on *Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240 (11th Cir. 2015), determined that Georgia law would reach the same result. [D.E. 292, at pages 10-14]. Georgia law would not reach the same result.

LAIC's policies were delivered in Georgia and thus the duty to indemnify is governed by Georgia law, as argued above. This Court recently has interpreted "property damage" under a CGL policy and Georgia law in *Morgan Concrete Company v. Westerfield Ins. Co.*, 2021 WL 755094 at 2-3 (11th Cir. 2021), where this Court determined that where defective concrete only damaged itself, there was

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

no duty to defend nor indemnify. Citing the Georgia Supreme Court, this Court noted that "the term 'property damage' means damage to property that was previously undamaged and 'and to damage beyond mere faulty workmanship.'" *Id. citing Taylor Morrison Servs., Inc. v. HDI-Gerling Am. Ins. Co.,*746 S.E.2d 587, 591 (2013). This Court went on to state that "[a]s a result, there is no coverage for 'liabilities for the repair or correction of the fault workmanship of the insured.'" *Id. citing Taylor Morrison Servs., Inc. v. HDI-Gerling Am. Ins. Co.,*746 S.E.2d at 591. This opinion is consistent with other Georgia law on the issue. *See Barrs v. Auto-Owners Insurance Company*, 564 F.Supp.3d 1362, 1375-77 (M.D. Ga. 2021); *Middlesex Ins. Co. v. Dixie Mechanical, Inc.*, 2022 WL 4484615 at 3-5 (N.D. Ga. 2022); *Meritage Homes of Georgia, Inc. v. Grange Ins. Co.*, 528 F.Supp.3d 1312, 1320 (N.D. Ga. 2021).

In *Trehel Corp. v. Owners Ins. Co.*, the court determined that an arbitration award was covered under a CGL policy as "property damage" when the award made clear that "none of the damages awarded pursuant to arbitration award were for costs incurred to repair [the contractor's] faulty workmanship" and instead the "entirety of the damage award was to compensate [the plaintiff] for costs resulting from damage to property caused by [the contractor's] faulty workmanship." 2014 WL 11820250 at 4-5 (N.D. Ga. 2014). The court cited the Georgia Court of Appeals as holding "[f]or there to be coverage under a CGL policy for faulty workmanship,

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

there would have to be damage to property other than the work itself and the insured's liability for such damage would have to arise from negligence, not breach of contract." (Emphasis added) *Id. citing Maxxum Indem. Co. v. Jiminez*, 734 S.E.2d 499, 503 (Ga. Ct. App. 2012).

In *First Coast Energy, LLP v. Cincinnati Ins. Co.*, the Middle District of Florida applied Georgia law and held "[t]he purpose of … comprehensive liability insurance coverage is to provide protection for personal injury or for property damage caused by the completed product, but not for the replacement and repair of that product." 227 F.Supp.3d 1282 (M.D. Fla. 2017)(*citing Elrod's Custom Drapery Workshop v. Cincinnati Ins. Co.*, 187 Ga.App. 670 (1988). The court went on to hold that "[t]hus, consistent with that purpose, damages that refer to defective work does not qualify as 'property damage.'" *Id.*

In *Allstate Insurance Company v. Adrianna Luu*, 2017 WL 5573025 (N.D. Ga. 2017), the court held that the insurer's duty to defend is determining by comparing the allegations of the complaint with the provisions of the policy, and that because the "Georgia Supreme Court has made clear that 'property damage,' as that term is used in the standard CGL policy, necessarily must refer to property that is nondefective, and to damage beyond mere faulty workmanship," that "any claims that arise as a result of faulty workmanship are not covered by the Policy." *Id.* at 2.

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

There are a long line of cases applying Georgia law enforcing the business risk exclusions in CGL policies. *See Sapp v. State Farm Fire & Cas. Co.*, 226 Ga. App. 200, 201-05 (1997). *See also, Gentry Machine Works Inc. v. Harleysville Mutual Insurance Co.*, 621 F.Supp.2d 1288 (M.D. Ga. 2008). In *Transportation Ins. Co. v. Piedmont Const. Group, LLC*, a Georgia appellate court held that: Georgia courts typically examine the following facts of each case when reviewing business-risk exclusions: First, the type and extent of construction work that the contractor is performing at the time of the accident and, second, the extent that the damages resulting from the contractor's accident may exceed the contractor's contractual duties. In short, the court asks itself, "Will the payment of insurance proceeds effectively cause an insurance company to guarantee the contractor's work?" If the answer is yes, the business-risk exclusions apply and the claim is denied. However, if the court finds that the payment of proceeds results from a negligent act causing damage above and beyond the original contractual obligations or to other property, the business-risk exclusions do not apply and the insurance company should pay the claim. 301 Ga.App. 17, 17-18 (2009). *See also Auto Owners Ins. Co. v. Gay Construction Co.*, 332 Ga.App. 757, 757-60 (2015).

Georgia law requires a result different than the result reached in the Court's March 27, 2018 Order. The District Court has ruled that under Florida law it "need not ascertain the value of the damage to 'other property'-here, the damage to the

LYDECKER LLP
1221 Brickell Avenue · 19th Floor · Miami · Florida 33131 · (305) 416-3180

tenants' carpet, walls and ceilings caused by water intrusion through the defective

windows" and that "it is the fact of damage to otherwise non-defective property and

the cause of that damage which compels a finding that coverage exists." [D.E. 216,

at page 44]. Under Georgia law, it would only be the value of the damage to "other

property" that could ever be covered. That number was not part of the $5,000,000

Window Repair and thus any action for indemnity against LAIC must fail.

And even if the facts of this case somehow met Georgia's more strict

definition of property damage, then Georgia law would still require enforcement of

LAIC's business risk exclusions. The Court must ask itself "[w]ill the payment of

insurance proceeds effectively cause an insurance company to guarantee the

contractor's work?" *Auto Owners Ins. Co. v. Gay Construction Co.*, 332 Ga.App. at

757-60. If the answer is yes, as it would be here, the exclusions are enforced and

coverage is denied.

The District Court rejected these arguments, attempting to distinguish some

of the above cited Georgia law. [D.E. 292, at pages 10-14]. For example, as to

*Trehel*, the District Court distinguished this case without explaining how it ignored

the portions of the case that painstakingly analyzed the arbitration award containing

no amounts for repair of defective work. 2014 WL 11820250 at 4-5.

As to the business risk exclusion cases, the District Court cited its prior orders

and then cited *Transportation Ins. Co. v. Piedmont Const. Grp., LLC*, 301 Ga. App.

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

17, 21 (2009), but that case specifically deals with a matter where damages are sought outside of contractor's scope of work caused by a fire (meaning the insurer was attempting to use the exclusion to prevent damage to other property and not to the insured's actual work).

After attempting to distinguish the Georgia case law relied upon by Landmark, the District Court simply applied its analysis of *Carithers* to Georgia law. *Carithers v. Mid-Continent Cas. Co.* does not require coverage for repairs of the actual work when no amounts are sought for damages to other property and the District Court's expansion of this decision should be outright rejected.

The district court in in *Carithers* awarded damages for damages to the brick/brick coating, the tiles/the mud base, and the balcony/the garage. *Id*. at 1248-49. The *Carithers* Court determined that two of the construction defects (bricks/brick coating and tile/mud base) were installed by the same subcontractors (or at least no evidence had been presented otherwise), and that because the "defective work caused no damage apart from the defective work itself", neither defect constituted "property damage." *Id*. at 1249-51. The district court in *Carithers* determined that the balcony was defectively constructed, which defective construction caused damage to the garage (which would constitute "property damage") and that in order to repair the garage, the balcony must also be repaired. *Id*. at 1251. With this in mind, the *Carithers* Court determined that "repairing the

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

balcony was part of the cost of repairing the garage", making both recoverable. *Id*.

No such similarity exists here, as literally no amounts were even sought, let alone

awarded, for damages caused by water intrusion through the windows. Instead, the

District Court believed that by virtue of evidence that water intrusion had caused

**non-claimed** interior damage, that this transformed the Window Repair into a

covered event. [D.E. 292, at pages 10-14]. In this determination, the District Court

was incorrect.

b. "Occurrence" and Limits of Insurance

The Final Judgment determined that repairs were needed in late 2014 to

prevent future water intrusion. That cannot be the basis for coverage, or the finding

of an occurrence, for policies that expired in November of 2007. Again, LAIC would

refer the Court to Georgia law. Neither the Georgia General Assembly nor the

Georgia appellate courts appear to have adopted a specific coverage trigger for latent

defects. The Middle District of Florida, when interpreting Georgia law, held that:

> Resolution of the issue would turn on whether the Court were to adopt
> a 'manifestation trigger' (coverage is triggered only when the damage
> occurs and is discovered within the policy period) or a 'continuous
> trigger' (coverage is triggered from the moment of exposure to the
> defect, rather than the moment injury) as the appropriate coverage
> trigger.
>
> *See Arrow Exterminators, Inc. v. Zurich Am. Ins. Co.*, 136 F. Supp. 2d
> 1340, 1345-46 (N.D. Ga. 2001).

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

If the Court determines there was "property damage" under the LAIC Policies and Georgia law, then analysis of an "occurrence"/the trigger would be necessary. Regardless of the trigger chosen, the unique circumstances of this case would require a ruling that there was no occurrence. The testimony below (and the findings in the Final Judgment) were that "RAP will experience leaking in all of the windows as the gaskets shrink and age over time" and "[w]ithout correction of the underlying defects in the window drainage systems, the evidence establishes that all of the windows will eventually leak." [D.E. 216, at page 42]. The District Court's determination that the window repairs were required to prevent ongoing water intrusion in the year 2014-15 cannot serve as the basis for a determination that there was an "occurrence" of "property damage" during Landmark's Policies effective in 2006-2007 that necessitated removal/replacement of all windows for a cost of approximately $5 million. The only known leaks that would be relevant to the 2006 LAIC Policy would be the December 25, 2006 water intrusion event that was covered by RAP's builder's risk policy. Landmark's 2006-2007 policy expired in January of 2007 and there is not any evidence that any other window leak occurred after December 25, 2006 and before that expiration. The Christmas 2006 event cannot be a basis for an occurrence for similar reasons that are argued in the section above regarding the equitable defense to the duty to defend. The only remaining policy is the 2007 LAIC Policy that was terminated in November of 2007. While there is some testimony of leaks in

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

2007, there is no quantification or documentation of these leaks and it is not even clear whether these leaks where through the windows or the roof, as the windows were not even fully installed at the end of 2006. However, even assuming some leaking from the windows in 2007, there still was not an occurrence under the 2007 LAIC Policy. This is regardless of the given "trigger" that is applied.

The manifestation trigger argument, where coverage is triggered only when the damage occurs and is discovered within the policy period, is obvious. *First Coast Energy, LLP v. Cincinnati Ins. Co.*, 227 F.Supp.3d at FN 5. The damage could not have occurred when the evidence showed that the gaskets were shrinking over time. [D.E. 24-1, pages 15-18 and 42-46]. The damage was not discovered until RAP employed experts years after the LAIC Policies expired. *Id*. This is when it was discovered that the windows were installed incorrectly and that the gaskets were shrinking. *Id*.

The continuous trigger argument, (coverage is triggered from the moment of exposure to the defect, rather than the moment of injury), reaches the same result. *First Coast Energy, LLP v.  Cincinnati Ins. Co.*, 227 F.Supp.3d at FN 5. *First Coast Energy, LLP v. Cincinnati Ins. Co.* citing *Arrow Exterminators, Inc. v. Zurich American Ins. Co.*, 136 F.Supp.2d 1340, 1345- 50 (N.D. Ga. 2001). The "defect" would not be the installation of the windows, but the eventual shrinking of the gaskets and the eventual repair of the entire window system. There is no actual

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

evidence that windows leaked from January 22, 2007 to November 1, 2007 beyond broad supposition. The Final Judgment was entered in late 2014, and the finding that repairs were needed then to stop ongoing and future water intrusion cannot serve as an occurrence for over seven years before that judgment.

The actual defects, as stated by the Final Judgment, were "(a) failure to use 'specified factory gaskets around the windows;' (b) 'installed perimeter sealants in the wrong location,'; and (3) 'blocked diverters in the horizontal sections of the windows …'" [D.E. 216, Pages 6-7]. This is what the $5 million repair was designed to fix. Yet an exhaustive combing of the record evidence put before the District Court did not show that any of those three things existed on or before November 1, 2007, which was the final date of coverage under Landmark's Policies.

As a central basis to its conclusion that there was an "occurrence" of "property damage" under the Landmark Policies the District Court relied on an email string (not cited by any party) regarding water intrusion through "window openings." [D.E. 307, Page 4]. The Court's reliance on this email string is not correct because there is a difference between a "window opening" and an installed window. There is no record evidence that LAIC's named insured TSG was responsible for any leaks that occurred through the window openings that are described in the January 12, 2007 email string relied upon by the District Court. [D.E. 307, Page 4]. The term window openings typically refers to the hole in a building wall where windows are to be

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

installed. There is no mention in the January 12, 2007 email string of any of the three defects that the District Court has determined give rise to indemnity coverage under LAIC's policies. [D.E. 121.7]. This is not surprising considering that window openings without windows would not have gaskets, sealants, or flashings present. As a result, the conditions described in the January 12, 2007, email string are not the same conditions that have been found as the basis for the Window System repair. If, as the evidence shows in the email string from January 12, 2007, water intruded into the Project through the roof and through actual window openings, that cannot be an occurrence of property damage during the Landmark Policies. An email describing water intrusion through a window opening does meet the definition of an "occurrence" of "property damage" arising from the work performed by LAIC's named insured TSG.

This whole issue demonstrates the problem with the Court's property damage rulings, as there are not amounts awarded for interior repairs for leaks over time, but instead just the ruling that a Window Repair is "property damage" because that repair will stop future water intrusion. The "occurrence" analysis is rendered difficult by the District Court determining that the "Window Repair" is somehow covered as either property damage or to prohibit future property damage.

Even if the 2007 LAIC Policy is triggered, there can be but one "occurrence" subject to the per occurrence limit of the LAIC Policies cited above. *See Travelers*

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

*Property Cas. Co. of America v. Continental Cas. Co.*, 226 F.Supp.3d 1359, 1367-72 (N.D. Ga. 2017) (holding a large-scale products liability action constituted one occurrence) *citing State Auto Prop. & Cas. Co. v. Matty*, 690 S.E. 2d 614 (Ga. 2010).

Here, the defectively installed window system is the alleged one proximate, uninterrupted, and continuing cause, and there can be at most, one occurrence. It is hard to fathom how one $5,000,000 Window Repair can constitute occurrences over multiple years, as the windows can only be repaired once. Both LAIC Policies have an "Each Occurrence Limit" of $1,000,000. [D.E. 65-6, at page 3] and [D.E. 65-7, at page 3]. This means, at worst, LAIC would only be liable for $1,000,000 total from all policies for indemnity.

The "Limits of Insurance" provision found in the LAIC Policies confirms this result. *See* [D.E. 295, at page 6]. The District Court believed that each policy had a separate per occurrence limit of $1,000,000. [D.E. 307]. However, that result can be reached only be rendering useless portions of the Limits of Insurance provision. It is undisputed that 2006 LAIC Policy was effective from January 2006 to January 2007. [D.E. 65-6]. It is also undisputed that the 2007 LAIC Policy was supposed to be effective from January 2007 to January 2008, but that the 2007 LAIC Policy was cancelled effective November 1, 2007. [D.E. 65-7]; and [D.E.75-1]. This means, for purposes of determining the Limits of Insurance, that the time periods from January 2007 to November 1, 2007 are deemed to be part of the 2006 LAIC Policy, as the

LYDECKER LLP
1221 Brickell Avenue · 19th Floor · Miami · Florida 33131 · (305) 416-3180

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

Limits of Insurance section provides that if the policy is extended for less than twelve months, that the "additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance." [D.E. 65-6, Page 15] and [D.E. 65-7, Page 15]. The District Court somehow thought this provision ambiguous, focusing on the word "extended", but Landmark disagrees.

The first page of the 2007 LAIC Policy makes clear that it is a renewal of the 2006 LAIC Policy. [Doc. 65-7, Page 2]. The 2006 LAIC Policy had a policy number of LHA103911. [Doc. 65-6, Page 2]. The 2007 LAIC Policy had a policy number of LHA104850, and says on the first page, entitled "COMMON POLICY DECLARATIONS," "POLICY NO. LHA104850 RENEWAL OF LHA103911." While the word "extended" is used, it is not in reference to the policy being extended, but to the "policy period" being extended. Indeed, the "Limits of Insurance" talks of it applying separately to each "consecutive annual period," unless the "policy period is extended after issuance for an additional period of less than 12 months." If that happens, the "additional period" is deemed part of the "last preceding period for purposes of determining the Limits of Insurance." This makes sense, as otherwise Landmark would potentially bear the full risk of the "per occurrence" limit absent a full premium. The clear intention of the paragraph is to provide "per occurrence" coverage for "each consecutive annual policy period" and to not allow a smaller unit

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

than 12 months to gain an additional amount of coverage. As this is case, the

$1,000,000 per occurrence limit holds true.

6.    THE UNREQUESTED $5,997,827.20

*Federal Rule of Civil Procedure Rule* 56(a) and (f) provides that:

> (a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, **identifying each claim** or defense--or the part of each claim or defense--on which summary judgment is sought.
>
> […]
>
> (f) Judgment Independent of the Motion.  **After giving notice and a reasonable time to respond**, the court may:
> (1) grant summary judgment for a nonmovant;
> (2) grant the motion on grounds not raised by a party; or
> (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.
>
> (*Emphasis added*).

Here, the district court apparently granted summary judgment against

Landmark for nearly $6,000,000.00 without any motion being filed seeking the

same.  There was no summary judgment filed on the issue.  There was no jury trial.

There was no bench trial.  In one order, the District Court determined that "… all

issues concerning Landmark have been decided." [Doc. 321, 5-6].  And without any

intervening trial or motion for summary judgment, the Court determined that

Landmark owed an additional $5,997,827.20.

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

Landmark was not put on notice that the District was doing this and was not even allowed to brief the issue. The District Court requested proposed final judgments only from Amerisure and Arch. [D.E. 335]. When Amerisure presented its proposed final judgment with amounts not previously requested by any motion, Landmark filed a motion to strike, correctly arguing these issues had never been requested in a motion or briefed in any way. [D.E. 339]. Amerisure filed its response, and Landmark requested to file a reply-after hearing for the first time any argument whatsoever for why Amerisure would be entitled to these amounts. [D.E. 341]. The District Court did not allow Landmark a reply brief. Instead, it entered a judgment for amounts that were never properly noticed and which Landmark was never given an opportunity to defend against.

Pursuant to *Federal Rule of Civil Procedure Rule* 56(f), a District Court can only enter summary judgment on an issue not raised in a motion after giving notice and a reasonable opportunity to respond. In *Imaging Business Machines, L.L.C. v. Bantec, Inc.*, 459 F.3d 1186, 1191 (11th Cir. 2006), this Court held that that a district court's *sua sponte* granting of summary judgment against a party without proper notice and opportunity to respond is reversible error. *See also*, *Yeager v. Advanced Disposal Services Alabama, LLC*, 2022 WL 17998532 at 2 (11th Cir. 2022)(*citing Byars v. Coca-Cola Co.*, 517 F.3d 1256, 1264 (11th Cir. 2008).

LYDECKER LLP
1221 Brickell Avenue · 19th Floor · Miami · Florida 33131 · (305) 416-3180

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

Additionally, the District Court allowed "attorney's fees and costs" as either defense costs Arch incurred for Auchter (which is factually inaccurate, Arch sued Auchter) or on some type of duty to defend Arch. However, Arch is not a named insured nor an additional insured under the Landmark Policies. Finding a duty to defend Auchter does not create a duty to defend Arch and no explanation was given by the District Court otherwise.

Amerisure's argument, as listed in the proposed final judgment, appears to be that these amounts for attorneys' fees and costs incurred by Arch are covered as Supplementary Payments under the Landmark Policies. However, under Georgia law attorneys' fees are not considered "costs" under Supplementary Payments-meaning the same could not be awarded even if requested. *Alea London Limited v. American Home Services, Inc.*, 638 F.3d 768, 773-74 and 779-81 (11th Cir. 2007)(holding that under Georgia law, attorneys' fees are not either "damages" nor "costs" as those terms are described in the Supplementary Payments provision of a CGL policy. Finally, Auchter is an additional insured under the Landmark Policies only through endorsements on its policies that are limited to its named insured's work (TSG-the window subcontractor)-and just as indemnity would be limited to TSG's scope of work, so should costs under a CGL Supplementary Payments provision. [D.E. 65-6, page 28 of 49] and [D.E. 65-7, page 30 of 51].

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

Landmark states that no amount of the $5,997.827.20 is owed pursuant to all of the defenses raised above to the duty to defend and indemnify (EIFS, equitable exception, property damage, and occurrence) and reincorporates those arguments here. If this Court determines some amount is owed under a duty to defend and/or indemnify theory, then Landmark states no portion of the $5,997.827.20 is owed, as awarding of the same was without notice and opportunity to respond. Landmark would state it does not owe the same under a duty to defend theory under any circumstance. If the Court determines some amount could have been pursued under a Supplementary Payments theory, that issue should have been briefed, and Landmark would argue that these amounts were not awarded in the "suit" (the "Underlying Action") for which the District Court even found coverage under the Landmark Policies. The Supplementary Payments provision requires the costs be awarded in the "suit" it is defending and these amounts were not awarded in suit where the District Court required such a defense. Landmark has additional defenses related to the proper amount that could be awarded and without knowing what is "attorneys' fees" and what is "costs" (and what is costs related to the windows), it would be impossible to determine this amount.

7.    ATTORNEYS' FEES

The District Court also (without allowing Landmark to brief the issue as it relates to the current judgment) granted entitlement of attorneys' fees to Amerisure.

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

[D.E. 342, page 13]. Landmark can only assume, based on the District Court's apparent reliance on Florida law and on Amerisure's Motion for Attorneys' Fees and Costs with Incorporated Memorandum of Law filed on December 7, 2022 [D.E. 344] that Florida law was utilized to reach this result.

Specifically, Amerisure seeks fees under Florida law-either *Florida Statutes* § 627.428 (insureds can get fees against insurers) or *Florida Statutes* § 786.79 (Florida's proposal for settlement statute). However, as both of these statutes have been found to be substantive, neither should be applied to Landmark, as only Georgia substantive law applies. *See All Underwriters v. Weisberg*, 222 F.3d 1309, 1311 (11th Cir. 2000) and *J.P.F.D. Investment Corp. v. United Specialty Ins. Co.*, 769 Fed. Appx. 698, FN 3 (11th Cir. 2019)(for *Florida Statutes* § 627.428) and *Menchise v. Akerman Senterfitt*, 532 F.3d 1146, 1150 (11th Cir. 2008)(for *Florida Statutes* § 786.79). Georgia law does not have a similar attorney fee statute as *Florida Statutes* § 627.428, and Georgia's statute requires bad faith to award fees. *Georgia Statutes* § 33-4-6.[3] There was no determination, or argument, of bad faith under Georgia law.

---

[3] This issue, as it relates to entitlement, is not stayed.

LYDECKER LLP
1221 Brickell Avenue · 19th Floor · Miami · Florida 33131 · (305) 416-3180

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

IX.    **<u>Relief Sought and Oral Argument Request</u>**

Landmark requests that an opinion be issued holding/finding that it owed Auchter no duty to defend in the Underlying Action, and hence owes Amerisure nothing for defending Auchter in the Underlying Action.  Landmark further requests this opinion state Landmark owes no party any amounts under a duty to indemnify (or otherwise) for amounts related to the Underlying Action, Final Judgment, Arch's settlement, the Window Repair, or for any reason whatsoever.

Landmark requests oral argument in this appeal.

LYDECKER LLP
1221 Brickell Avenue · 19th Floor · Miami · Florida 33131 · (305) 416-3180

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

## X.  Landmark's Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1.     This document complies with the type-volume limit of *Fed. R. App. P. Rule 32(a)(7)(B)* because, excluding the parts of the document exempted by *Fed. R. App. P. Rule 32(f)*, this document contains 12,991 words.

2.     This document complies with the typeface requirements of *Fed. R. App. P. Rule 32(a)(5)* and the type-style requirements of *Fed. R. App. P. Rule 32(a)(6)* because this document has been prepared in a proportionally spaced typeface using the latest version of Microsoft Word in 14-point font using Times New Roman.

By: ***/s/ Spencer Mallard***

*Attorney for Landmark American*
*Insurance Company*

D. Spencer Mallard, Esq.
(FL Bar # 26497)
Jeremy W. Harris, Esq.
(FL Bar # 41131)
LYDECKER LLP
1221 Brickell Avenue, 19th Floor
Miami, FL 33131
sm@lydecker.com
jharris@lydecker.com
Tel: (305) 416-3180
Fax: (305) 416-3190

Dated: February 22, 2023

LYDECKER LLP
1221 Brickell Avenue · 19th Floor · Miami · Florida 33131 · (305) 416-3180

*Amerisure Insurance Company et al., v. Landmark American Insurance Company et al.,*
*CASE NO. 22-14136*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 22, 2023, a true and correct copy of the foregoing document is being served this day on all counsel of record through the Court's CM/ECF system.

By: */s/ **Spencer Mallard***

*Attorney for Landmark American*
*Insurance Company*

D. Spencer Mallard, Esq.
(FL Bar # 26497)
Jeremy W. Harris, Esq.
(FL Bar # 41131)
LYDECKER LLP
1221 Brickell Avenue, 19th Floor
Miami, FL 33131
sm@lydecker.com
jharris@lydecker.com
Tel: (305) 416-3180
Fax: (305) 416-3190