Case No. 22-14136

———————————————————————

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

———————————————————————

AMERISURE INSURANCE COMPANY and AMERISURE MUTUAL
INSURANCE COMPANY,
*Plaintiffs-Counter-Defendants-Appellees*,

v.

THE AUCHTER COMPANY, *et al.*,
*Defendants*,

LANDMARK AMERICAN INSURANCE COMPANY,
*Defendant-Cross-Claimant-Appellant*.

———————————————————

On Appeal From Case No. 3:16-cv-00407-BJD-LLL
United States District Court for the Middle District of Florida
Jacksonville Division

———————————————————

## APPELLEES' RESPONSE BRIEF

———————————————————

Andrew F. Russo, FBN 508594          Donald E. Elder, IL Bar No. 6255889
Rywant, Alvarez, Jones, Russo        Brett L. Warning, IL Bar No. 6199057
  & Guyton, P.A.                     Anthony N. Balice, IL Bar No. 6271902
302 Knights Run, Suite 1000          Emerson & Elder, P.C.
Tampa, FL 33602                      53 W. Jackson Blvd., Suite 526
arusso@rywantalvarez.com             Chicago, IL 60604
(813) 229-7007 (Telephone)           dee@emersonelder.com
(813) 223-6544 (Facsimile)           (312) 520-2502 (Telephone)
                                     (312) 265-1603 (Facsimile)

## <u>Certificate of Interested Persons and Corporate Disclosure Statement Pursuant to FRAP 26.1(a) and 11th Cir. R. 26.1-1</u>

No. 22-14136

*Amerisure Insurance Company, et al. v. Landmark American Insurance Company*

Pursuant to Federal Rule of Appellate Procedure 26.1(a) and Eleventh Circuit Rules 26.1-1 through 26.1-3, Appellees, Amerisure Insurance Company and Amerisure Mutual Insurance Company, et al. ("Amerisure"), submit the following:

1) A complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

- Alhadeff, Seth Victor, counsel for Arch Insurance Company

- Allianz Reinsurance American, Appellee

- Allianz Resolution Management, Appellee

- Amerisure Insurance Company, Appellee

- Amerisure Mutual Insurance Company, Appellee

- Arch Insurance Company, Defendant

- The Auchter Company

- Baker, Terre, of Amerisure Insurance Company and Amerisure Mutual Insurance Company

- Balice, Anthony N., counsel for Appellees

C1 of 4

- Beach, Joel L., Assistant V.P. for Arch Insurance Company

- Darroch, Robert M., counsel for FCCI Insurance Company and National Trust Insurance Company

- Davis, Honorable Brian J., United States District Judge

- Ehrenreich, Todd R., counsel for Arch Insurance Company

- Elder, Donald E., counsel for Appellees

- Emerson & Elder, PC, counsel for Appellees

- Ender, Kathryn Lee, counsel for Arch Insurance Company

- FCCI Insurance Company

- Goldenberg, Brian S., counsel for Arch Insurance Company

- Goodman McGuffey LLP, counsel for FCCI Insurance Company and National Trust Insurance Company

- Goodman, William, of Allianz Reinsurance America, Inc. and Allianz Resolution Management

- Haas, Stephanie, of Amerisure Insurance Company and Amerisure Mutual Insurance Company

- Harman, Rachel L., counsel for FCCI Insurance Company and National Trust Insurance Company

- Harris, Jeremy Wayne, counsel for Appellant

- Kasbohm, Pam, of Allianz Reinsurance America, Inc. and Allianz Resolution Management

- Landmark American Insurance Group, Appellant

- Lewis Brisbois Bisgaard & Smith LLP, counsel for Arch Insurance Company

- Lydecker, LLP, counsel for Appellant

- Mallard, Dana Spencer, counsel for Appellant

- Meier, Phyllis L., of Amerisure Insurance Company and Amerisure Mutual Insurance Company

- National Trust Insurance Company

- RSUI Group, Inc.

- RSUI Indemnity Company

- Russo, Andrew F., counsel for Appellees

- Rywant, Alvarez, Jones, Russo & Guyton, P.A., counsel for Appellees

- TSG Industries, Inc.

- Warning, Brett L., counsel for Appellees

2)  The name of every other entity whose publicly-traded stock, equity, or debt may be substantially affected by the outcome of the proceedings:

None other than those identified in Paragraph 1 above.

3)  The name of every other entity which is likely to be an active participant in the proceedings, including the debtor and members of the creditors' committee (or twenty largest unsecured creditors) in bankruptcy cases:

None other than those identified in Paragraph 1. In addition, there are no bankruptcy cases known to Amerisure that includes any entity or individual that is likely to be an active participant in the proceedings.

4) The name of each victim (individual or corporate) of civil and criminal conduct alleged to be wrongful, including every person who may be entitled to restitution:

None known to Amerisure.

Respectfully submitted,

Dated:  April 24, 2023          By:  /s/ Andrew F. Russo

Attorney for Appellees
Amerisure Insurance Company and
Amerisure Mutual
Insurance Company

## STATEMENT REGARDING ORAL ARGUMENT

Amerisure Insurance Company and Amerisure Mutual Insurance Company believe that the issues in this appeal can be determined without the need for oral argument and, therefore, do not request oral argument.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure ......................... ii
Statement Pursuant to FRAP 26.1(a) and 11th Cir. R. 26.1-1

Statement Regarding Oral Argument ........................................... vi

Table of Contents ........................................................ vii

Table of Citations ......................................................... x

Statement of Subject Matter and Appellate Jurisdiction ............................... 1

Statement of the Issues .................................................... 3

Statement of the Case .................................................... 4

    I.     Course of Proceedings .................................................. 4

    II.    Statement of Facts ................................................... 5

         A. Auchter/TSG Subcontract ........................................ 5

         B. Underlying Complaint............................................ 5

         C. Landmark Policies ............................................. 6

         D. Amerisure Policies ............................................ 7

         E. Landmark's Failure to Defend Auchter ................................ 7
            in the Underlying Action

         F. Arch and Auchter Third Party Complaint Against TSG............ 7

         G. Final Judgment in the Underlying Action................................ 8

         H. Arch, Auchter, RAP Joint Fees Stipulation ............................. 8

         I. The General Indemnity Agreement........................................... 9

J. Arch's Claims Against Landmark ................................................. 9

K. Amerisure/Arch Settlement ...................................................... 11

L. The Final Judgment ................................................................ 11

III.    Standard of Review ...................................................... 12

Summary of the Argument ......................................................... 12

Argument and Citation of Authority ............................................ 16

I.    The EIFS Exclusion is Inapplicable .............................................. 16

A. Landmark's EIFS Exclusion Does Not Apply ......................... 16
to "Property Damage" Caused by TSG's
Ongoing Operations

B. The District Court Properly Found That Landmark's ............ 18
Policies Provide Illusory Coverage

C. The District Court Properly Found That the EIFS .................. 24
Exclusion Does Not Bar Landmark's Duty to
Defend Auchter

D. The District Court Correctly Found That ................................ 26
the EIFS Exclusion Does Not Bar Landmark's
Duty to Indemnify Auchter

II.    Landmark's Attempt to Expand the Duty to Defend ................... 29
Doctrine Should be Rejected

III.    Landmark Owes a Duty to Indemnify Auchter ........................... 35

A. Landmark's Business Risk Exclusions .................................... 41
Do Not Support Its Attempt to Undo the Final Judgment

B. Landmark's No "Occurrence" Argument is Untenable ........... 45

      C.  Landmark's Limits of Insurance Argument is Unfounded ...... 47

IV.     Amerisure Was Properly Awarded $5,997,827.20 and ............... 49
            Interest in the Final Judgment

V.      The District Court Properly Held That Amerisure is .................... 53
            Entitled to Attorneys' Fees and Costs

Conclusion ...................................................................................... 56

Certificate of Compliance .............................................................. 58

Certificate of Service ..................................................................... 59

## TABLE OF CITATIONS

### Cases

*AA Action, Inc. v. Transcontinental Insurance Co.*, ............................... 48-49
2009 WL 10664949, *3 (N.D. Ga. June 4, 2009),
*aff'd*, 360 F.App'x. 45 (11th Cir. 2010)

*Aetna Casualty & Surety Co. v. The Protective National
Insurance Company of Omaha*, .................................................... 51
631 So.2d 305, 309 (Fla. 3d DCA 1994)

*Ajax Building Corp. v. Hartford Fire Insurance Co.*, ................................ 28
358 F.3d 795, 799 (11th Cir. 2004)

*Alea London Limited v. American Home Services, Inc.*, ............................ 52
638 F.3d 768 (11th Cir. 2007)

*All Underwriters v. Weisberg,* ..................................................... 54
222 F.3d 1309, 1311 (11th Cir. 2000)

*Altman Contractors, Inc. v. Crum & Forster
Specialty Insurance Co.*, ............................................................. 17
832 F.3d 1318, 1322 (11th Cir. 2016)

*American Empire, etc. Insurance Co. v.
Hathaway Development Co.*, ......................................................... 40, 45
288 Ga. 749, 751, 707 S.E.2d 369, 371 (2011)

*Arcadian Fertilizer, L.P. v. MPW Industrial Services, Inc.*, ....................... 56
249 F.3d 1293, 1296 (11th Cir. 2001)

*Arrow Exterminators, Inc. v. Zurich American Insurance Co.*, .................. 46
136 F.Supp.2d 1340, 1349 (N.D. Ga. 2001)

*Auto Owners Insurance Co. v. Gay Construction Co.*, .......................... 43-44
332 Ga.App. 757, 774 S.E. 2d 798 (2015)

*Baron Oil Company v. Nationwide Mutual
Fire Insurance Co.,* .................................................................... 33
470 So.2d 810 (Fla. 1st DCA 1985)

*BITCO National Insurance Co. v. Old Dominion
Insurance Co.*, ........................................................................ ...21, 21-22, 23
379 F.Supp.3d 1230 (N.D. Fla. 2019)

*Blasser Bros. v. Northern Pan–American Line*, ........................................... 55
628 F.2d 376, 386 (5th Cir.1980)

*Boardman Petroleum, Inc. v. Federated Mutual Insurance Co.*, ................ 46
926 F.Supp. 1566, 1577 (S.D. Ga. 1995),
*rev'd on other grounds*, 150 F.3d 1327 (11th Cir. 1998)

*Bradfield v. Mid-Continent Casualty Co.*, .............................................. 13, 24
143 F.Supp.3d 1215, 1231 (M.D. Fla. 2015),
*appeal dismissed*, (11th Cir. 15-15547 April 8, 2016)

*Briggs & Stratton Corp. v. Royal Globe Insurance Co.*, ........................ 46-47
64 F.Supp.2d 1346, 1349-50 (M.D. Ga. 1999)

*Capitol Specialty Insurance Corp. v. Yuan Zhang*, ................................ 27-28
2012 WL 1252638 (W.D. Wash. Apr. 13, 2012)

*Carithers v. Mid-Continent Casualty Co.*, ................................. 14, 37, 41, 46
782 F.3d 1240 (11th Cir. 2015)

*Composite Structures, Inc. v. Continental Insurance Co.*, ..................... 32-33
560 F.Appx. 861 (11th Cir. 2014)

*Cynergy, LLC v. First American Title Insurance Co.*, ...................... 13, 19
706 F.3d 1321, 1327 (11th Cir. 2013)

*David R. Farbstein, P.A. v. Westport Insurance Corp.*, ............................33
2017 WL 3425327 (S.D. Fla. Aug. 9, 2017)

*Diamond State Insurance Co. v. Boys' Home Association, Inc.*, ............... 33
172 F.Supp.3d 1326, 1340 (M.D. Fla. 2016)

*Empire Fire and Marine Insurance Co. v. Span*, ...................................... 34
2021 WL 2255127, *5 (S.D. Fla. June 3, 2021)

*Evanston Insurance Co. v. Littlejohn*, .......................................................30

2017 WL 6373992, *5 (N.D. Ga. Sep. 6, 2017)

*First Mercury Insurance Co. v. Sudderth*, ........................................ 13, 19
620 F.App'x. 826, 830 (11th Cir. 2015)

*Fidelity–Phenix Fire Insurance Company of New York v.*
*Cortez Cigar Co.,*............................................................................. 55
92 F.2d 882, 885 (5th Cir. 1937)

*First Specialty Insurance Corp. v. 633 Partners*, *Ltd.*, ................... 32, 33-34
300 F.App'x. 777, 786-87 (11th Cir. 2008)

*Furcron v. Mail Centers Plus, LLC*,....................................................... 14-15
843 F.3d 1295, 1304 (11th Cir. 2016)

*Geico General Insurance Co. v. Rodriguez*, ........................................ 51-52
155 So.3d 1163, 1172 (Fla. 3d DCA 2014)

*Gentry Machine Works, Inc. v. Harleysville*
*Mutual Insurance Co.,* ..................................................................... 44
621 F.Supp.2d 1288 (M.D. Ga. 2008)

*Great American Alliance Insurance Co. v. Anderson*, ............................... 41
847 F.3d 1327, 1331 (11th Cir. 2017)

*Great Lakes Insurance SE v. Wave Cruiser LLC,* .................................. 12, 36
36 F.4th 1346, 1352 (11th Cir. 2022)

*Hartford Accident & Indemnity Co. v. Beaver,* ............................... 17-18, 21
466 F.3d 1289, 1296 (11th Cir. 2006)

*Henning Construction Co., LLC v. Phoenix Insurance Co.*, ...................... 23
570 F.Supp.3d 670 (S.D. Iowa 2021)

*Higgins v. State Farm Fire & Casualty Co.*, .............................. 34
894 So.2d 5 (Fla. 2005)

*Hooters of Augusta, Inc. v. American Global Insurance*, ........................... 20
272 F.Supp.2d 1365 (S.D. Ga. 2003),
*aff'd*, 157 F.App'x. 201 (11th Cir. 2005)
*Hoover v. Maxum Indemnity Co.*, ..........................................................29

291 Ga. 402, 407-08, 730 S.E.2d 413, 418 (2012)

*Hurlbert v. St. Mary's Health Care Systems, Inc.*, ...................................... 12
439 F.3d 1286, 1293 (11th Cir. 2006)

*In Re: 3M Combat Arms Earplug Products Liability Litigation*, ................ 55
2021 WL 1269173 (N.D. Fla. Aug. 8, 2021)

*Insurance Corporation of Hannover v. Skanska*
*USA Building, Inc.*, ................................................................................. 26
2008 WL 2704654 (S.D. Tex. July 3, 2008)

\**Jones v. Florida Insurance Guaranty*
*Association, Inc.*, ................................................................ 13, 25, 29, 30, 31
908 So.2d 435, 443 (Fla. 2005)

*Lawyers Title Insurance Corp. v. JDC (America) Corp.*, .......................... 29
52 F.3d 1575, 1580 (11th Cir. 1995)

*Maxum Indemnity Co. v. Jimenez*, ......................................................... 45
318 Ga.App. 669, 671, 734 S.E.2d 499, 503 (2012)

*Menchise v. Akerman Senterfitt*, ............................................................. 56
532 F.3d 1146, 1150 (11th Cir. 2008)

*Mid-Continent Casualty Co. v. Treace*, .................................................... 51
186 So.3d 11, 12 (Fla. 5th DCA 2015)

*Nationwide Mutual Fire Insurance Co. v. Keen,* ............................. 34-35
658 So.2d 1101 (Fla. 4th DCA),
*rev. denied*, 666 So.2d 143 (Fla. 1995)

*Pine Oak Builders, Inc. v. Great American Lloyds Insurance Co.*, ....... 26-27
292 S.W.3d 48 (Tex. App. 2006),
*aff'd in part, rev'd in part*, 279 S.W.3d 650 (Tex. 2009)

*Pinkerton & Laws, Inc. v. Royal Insurance Company of Am.*, ................... 42
227 F.Supp.2d 1348, 1354 (N.D. Ga. 2002)

*Princeton Excess & Surplus Lines Insurance Co. v.*

*Hub City Enterprises, Inc.*, .......................................................................... 35
808 F.App'x. 705, 708 (11th Cir. 2020)

*QBE Insurance Co. v. Couch Pipeline & Grading, Inc.*, ............................ 44
303 Ga.App. 196, 199, 692 S.E.795, 797 (2010)

*Richards v. Hanover Insurance Co.*, ............................................................ 41
250 Ga. 613, 615, 299 S.E.2d 561, 563 (1983)

*Sapp v. State Farm Fire & Casualty Co.*, ............................................... 42, 43
226 Ga.App. 200, 486 S.E.2d 71 (1997)

*SawHorse v. Southern Guaranty Insurance Co.,* .......................................... 40
269 Ga.App. 493, 498-499(2) (a), (b), 604 S.E.2d 541, 546 (2004)

*Sinni v. Scottsdale Insurance Co.*, ............................................................... 34
676 F.Supp.2d 1319 (M.D. Fla. 2009)

*Southeast Atlantic Cargo Operations, Inc. v.*
*First State Insurance Co*., ............................................................................... 51
216 Ga.App. 791, 793-94, 456 S.E.2d 101, 103-04 (1995)

*Southern Guaranty Insurance Co. v. Dowse*, ........................................ 29-30
278 Ga. 674, 676, 605 S.E.2d 27, 29 (2004)

*Southern-Owners Insurance Co. v. Easdon, Rhodes & Assoc.*, ................... 24
872 F.3d 1161, 1164 (11th Cir. 2017)

*\*St. Paul Fire & Marine Insurance Co. v.*
*Ohio Casualty Co.*, ............................................................................... 23-24, 26
2014 WL 1285824 (D. Ariz. Mar. 28, 2014)

*Steadfast Insurance Co. v. Celebration Source, Inc.,* ................................... 34
240 F.Supp.3d 1295, 1303 (S.D. Fla. 2017),
*aff'd*, 730 F.App'x. 865 (11th Cir. 2018)

*Swire Pacific Holdings, Inc. v. Zurich Insurance Co.*, ................................ 49
845 So.2d 161, 165 (Fla. 2003)

*Transcontinental Insurance Co. v. Ice*
*Systems of America, Inc.*, ................................................................... 15, 42
847 F.Supp. 947, 950 (M.D. Fla. 1994)

*Transportation Insurance Co. v. Piedmont*
*Construction Group, LLC*, ................................................................... 41, 42
301 Ga.App. 17, 686 S.E.2d 824 (2009)

*Trehel Corp. v. Owners Insurance Co.*, ........................................................ 46
2014 WL 11820250 (N.D. Ga. Nov. 19, 2014)

*Trinity Universal Co. v. Employer's Mutual Casualty Co.*, ........................ 26
592 F.3d 687 (5th Cir. 2010)

*Trovillion Construction and Development, Inc. v.*
*Mid-Continent Casualty Co.*, ...................................................................25
2014 WL 201678, *1 (M.D. Fla. Jan. 17, 2014)

*U.S. Fire Insurance Co. v. J.S.U.B., Inc.*, ............................................... 40, 45
979 So.2d 871, 889-90 (Fla. 2007)

*Vigilant Insurance Co. v. Continental Casualty Co.*, ................................. 54
33 So.3d 734, 737-38 (Fla. 4th DCA 2010)

## Federal Statutes

28 U.S.C. § 1291 ............................................................................................. 2
28 U.S.C. § 1332 ............................................................................................. 2
28 U.S.C. § 1441 ............................................................................................. 2
28 U.S.C. § 1920 ........................................................................................... 56

## State Statutes

Fla. Stat. § 627.428 ................................................................................. 54, 55
Fla. Stat. § 786.79 ................................................................................... 54, 56

## Rules of Court

Fed. R. Civ. P. 54 (d)(1) ............................................................................. 56
Fla. R. Civ. P. 1.442 .................................................................................... 56

x

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

Amerisure Insurance Company and Amerisure Mutual Insurance Company (collectively "Amerisure") filed their Complaint against The Auchter Company ("Auchter"), Arch Insurance Company ("Arch"), Landmark American Insurance Company ("Landmark"), TSG Industries, Inc. ("TSG"), and B & B Companies of Duval, Inc. ("B&B") in the Northern District of Florida, which was transferred to the Middle District of Florida upon motions by Arch and Landmark [D.E. 42].[1]

Amerisure Insurance Company and Amerisure Mutual Insurance Company are insurance companies organized and existing under the laws of the State of Michigan with their principal place of business in Farmington Hills, Michigan. [D.E. 24, para. 9]. Amerisure Insurance Company and Amerisure Mutual Insurance Company conduct business within the State of Florida. [D.E. 24-13, p. 2 & D.E. 24-14, p. 2]. Auchter was a Florida corporation with its principal place of business in Jacksonville, Florida, and was doing business in Florida. [D.E. 24, para. 10]. Arch is a Missouri corporation with its principal place of business in New York, New York. Arch was, and is, doing business in the State of Florida. [*Id.*, para. 11]. Landmark

---

[1] "D.E. _____" references the docket entry number in the District Court.

1

is an insurance company organized and existing under the laws of the State of Oklahoma with its principal place of business in Atlanta, Georgia. [*Id.*, para. 12]. TSG is/was a Georgia corporation with its principal place of business in Valdosta, Georgia. [*Id.*, para. 14]. B&B is/was an inactive Florida corporation with its principal place of business in Florida. [*Id.*, para. 15]. The District Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 and § 1441 because complete diversity of citizenship exists between Plaintiffs and Defendants, and the amount in controversy exceeds $75,000, exclusive of interests and costs. [*Id.*, para. 16.]

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the District Court's judgment, entered on November 17, 2022 [D.E. 343], is final and disposes of all claims and causes of action between the parties. The lone remaining issue pertains to the amount of fees and costs to be awarded to Amerisure, which has been stayed during the pendency of this appeal. [D.E. 354.]. Landmark's Notice of Appeal was filed on December 12, 2022. [D.E. 347].

## STATEMENT OF THE ISSUES

1)      Whether the District Court Correctly Found That the EIFS Exclusion in Landmark's Policies Does Not Apply;

2)      Whether the District Court Properly Found That There Is No Exception to the Standard for Determining the Duty to Defend;

3)      Whether the District Court Properly Found That the Window System Caused "Property Damage" that Occurred During the Policy Periods of the Landmark Policies;

4)      Whether the District Court Properly Found That Amerisure is Entitled to an Award of $5,997,827.20 as a Supplementary Payment Under Landmark's Policies and Which is Owed by Landmark by Virtue of its Breach of its Duty to Defend and Indemnify Auchter; and

5)      Whether the District Court Properly Found That Amerisure is Entitled to Its Attorneys' Fees and Costs Incurred in This Action.

## STATEMENT OF THE CASE

### I.    Course of Proceedings

Amerisure filed this action on October 23, 2015 in the Northern District of Florida seeking relief in relation to the Final Judgment entered in the underlying construction defect action, styled *Riverside Avenue Partners, Ltd. v. The Auchter Company,* Case No. 16-2010-CA-006433, previously pending in the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida ("Underlying Action") [D.E. 24, p. 2].

The Underlying Action adjudicated liability in regards to alleged defects in the construction of the thirteen-story office building located at 501 Riverside Avenue, Jacksonville, Florida, for which Auchter was the general contractor ("the Project") [D.E. 24, pp. 3-4].

This matter was transferred to the Middle District of Florida on April 4, 2016 [D.E. 42].  Landmark filed a Counterclaim against Amerisure and a Cross-Claim against Arch [D.E. 55], and Arch filed a Counterclaim against Amerisure and a Cross-Claim against Landmark [D.E. 51]; Arch amended its Counterclaim to seek relief against Landmark and Amerisure. [D.E. 116].

The parties engaged in extensive written discovery and depositions, and filed several Motions to Compel.  The parties also filed numerous Motions for Summary Judgment and Motions for Reconsideration.  The District Court entered a Final Judgment on November 17, 2022 [D.E. 343].  Landmark filed

4

its Notice of Appeal on December 12, 2022 [D.E. 347]. Landmark presents

six issues in its appeal, which are addressed herein.

## II.    Statement of Facts

### A.    Auchter/TSG Subcontract

On June 15, 2006, Auchter and TSG entered into a subcontract whereby

TSG installed a Window/Curtain Wall System at the Project ("Subcontract")

[D.E. 65-2, p. 2]. The Subcontract required TSG to obtain general liability

coverage naming Auchter as an additional insured "for all Auchter Projects"

on a primary and non-contributory basis. [*Id.*, p. 15]. Such coverage included

both ongoing and completed operations coverage. [*Id.*]. The Subcontract also

requires TSG to indemnify Auchter from "any and all liability" in connection

with the performance of TSG's work, which includes payment of attorneys'

fees arising from any suit. [*Id.*, p. 3]. Landmark issued two commercial

general liability insurance policies to TSG. [D.E. 65-6 & 65-7].

### B.    Underlying Complaint

The Underlying Complaint alleges that the Project suffered water

intrusion resulting in alleged damage to tenant improvements on December

25, 2006 (because the Project was not watertight) [D.E. 65-1, para. 14]. The

Underlying Complaint further alleges that the Project allegedly suffered leaks

in 2007 and 2008 as an alleged result of TSG's work, which allegedly caused

damage. [D.E. 65-1, para. 43(k)]. Paragraph 22 of the Underlying Complaint

states:

> After Auchter finally completed the building envelope and many tenants had assumed occupancy, the Project experienced additional leaks and water intrusion due to defective construction. On September 17, 2007 substantial water damage occurred to the tenant space of RAP's anchor tenant, Everbank, making portions of the space unusable. Water intrusion at various locations continued during rain events through 2007 and into 2008.

[*Id.*, para. 22.]

### C.    Landmark Policies

Auchter is an additional insured on Landmark's Policies *via* two blanket additional insured endorsements ("the AI Endorsements") contained in Landmark's Policies. [D.E. 65-6, p. 28; D.E. 65-7, p. 30]. Both endorsements provide primary coverage to Auchter where required by written contract or certificate of insurance. [*Id.*]. The 2006 AI Endorsement covers Auchter for liability arising out of "your [TSG's] work." The 2007 AI Endorsement covers Auchter for "property damage" caused, in whole or in part, by the named insured's [TSG's] acts or omissions "in performance of your [TSG's] ongoing operations or 'your [TSG's] work for the additional insured [Auchter].'" [*Id.*].

The Supplementary Payments – Coverage A and B of the Landmark Policies state that Landmark "will pay, with respect to any claim we investigate or settle, or any 'suit' against an insured we defend . . . e. All costs

taxed against the insured in the 'suit.'" [D.E. 65-6, p. 12-13; D.E. 65-7, p. 12-13]. Landmark's Supplementary Payments provision further states that "[t]hese payments will not reduce the limits of insurance." [*Id.*].

D.    Amerisure Policies

The Amerisure Policies were issued to Auchter as its named insured. [D.E. 24-13; D.E. 24-14]. The Amerisure Policies provide excess coverage to Auchter *vis-à-vis* Landmark's Policies by virtue of Amerisure's Excess Endorsement (the insurance is "excess over any other insurance, whether primary, excess, contingent or on any other basis . . . That is valid and collectible insurance available to you [Auchter] . . . under any other policy."), and as reflected by the Subcontract's indemnity provision. [D.E. 24-13, p. 77; D.E. 24-14, p. 62].

E.    Landmark's Failure to Defend Auchter in the Underlying Action

Landmark acknowledged Auchter as an additional insured, and agreed to defend Auchter in the Underlying Action [D.E. 24-8, 24-9, & 24-10]. Landmark, however, refused to defend Auchter in the Underlying Action. In light of this refusal, Amerisure defended Auchter in the Underlying Action, and paid the sum of $1,208,593.34 to do so. [D.E. 24-11].

F.    Arch and Auchter Third-Party Complaint Against TSG

Arch and Auchter filed a third-party complaint against TSG in the

Underlying Action seeking to recover amounts attributable to its alleged defective work at the Project. [D.E. 65-3]. The third-party complaint alleged that TSG's work (*i.e*., the Window/Curtain Wall System) was not performed in accordance with the contract and/or Subcontract, and had resulted in consequential damages to the Project. [*Id*., paras. 33, 41]. As TSG's direct insurer, Landmark defended TSG in the Underlying Action.

G.    Final Judgment in the Underlying Action

On November 5, 2014, the Final Judgment was entered in the Underlying Action in favor of RAP. [D.E. 24-1]. Among other components, Auchter and Arch were found liable to RAP for $5,067,033.01 for the building envelope (*i.e.,* Curtain Wall System). [D.E. 24-1, p. 46]. The Final Judgment also found in favor of Arch and Auchter against TSG on the third-party complaint, and awarded $5,067,033.01 against TSG. [*Id.*, pp. 83-84, 87].

H.    Arch, Auchter, RAP Joint Fees Stipulation

In the Underlying Action, Arch, Auchter and RAP filed a Joint Stipulation to RAP's attorneys' fees, costs and expenses ("the Stipulation") agreeing that RAP was entitled to recover attorneys' fees and costs in the amount of $2,775,347.42. [D.E. 51, p. 40]. In July 2015, Arch and RAP entered into a Limited Release Agreement ("Limited Release") thereby satisfying all amounts due and owing to RAP pursuant to the Stipulation. [*Id*]. In August 2015, Arch and RAP also entered into a Settlement Agreement,

Mutual Release and Assignment of Claims ("Settlement Agreement") thereby satisfying all amounts due and owing to RAP pursuant to the Final Judgment in the Underlying Action, inclusive of prejudgment interest. [*Id.*].

I.    The General Indemnity Agreement

Arch, as a surety on the Project, guaranteed the obligations of Auchter under the contract with RAP for construction of the Project. [D.E. 51, pp. 41-42]. Arch and Auchter entered into a General Indemnity Agreement ("GIA") whereby Auchter agreed to indemnify and hold Arch harmless for any and all losses sustained or incurred by reason of having executed the Bonds in connection with the Project. [*Id.*]. On August 13, 2015, Arch sued Auchter for contractual indemnification pursuant to the GIA, (*i.e., Arch Insurance Company v. The Auchter Company*, Case No., 2015-CA-005022 (Cir. Ct., Fourth Jud. Cir., Duval County, Fla.)) ("the Arch Lawsuit"). [D.E. 51, pp. 42-43]. Therein, the court awarded, among other amounts, $5,997,827.20 to Arch and against Auchter for Arch's attorneys' fees and costs incurred in the Underlying Action [D.E. 159-1, p. 18].

J.    Arch's Claims Against Landmark

On April 18, 2016, Arch filed its Cross-Claim for Declaratory Relief and Breach of Contract against Landmark ("Cross-Claim"). [D.E. 51, pp. 35-49]. In the Cross-Claim, Arch sought, in part, the amounts paid under the Limited Release, and those awarded against Auchter in the Arch Lawsuit.

[D.E. 51, p. 44]. Arch's Cross-Claim further states that: "Arch is entitled to reimbursement from Landmark for the amounts Arch paid to RAP in satisfaction of the Final Judgment and Stipulation in the Underlying Action under the Limited Release and Settlement Agreement, inclusive of pre-judgment interest and RAP's attorney's fees and costs, and the Landmark Policies provide coverage for any amounts awarded against Auchter in favor of Arch [in the] Auchter lawsuit, inclusive of Arch's attorney's fees and costs in the Underlying Action." [D.E. 51, p. 46].

In its initial disclosure in the District Court, Arch further maintained that it sought to recoup all amounts paid in satisfaction of the Final Judgment entered in the Underlying Action as well as the amounts paid in satisfaction of the Stipulation of Riverside Avenue Partner Ltd.'s Motion for Attorney's Fees, Costs, and Expenses ($2,775,347.42) and for Arch's attorneys' fees, costs, and expenses incurred in defending the claims in the Underlying Action ($5,997,827.90). [D.E. 340-2, p. 18].

On March 11, 2019, in a Joint Status Report to the District Court, the parties set forth their respective positions addressing the remaining issues to be addressed by the District Court. [D.E. 296]. Pertinently, Arch stated "Landmark and Amerisure are obligated to indemnify Arch for attorneys' fees, costs, and pre- and post-judgment interest on the window-system damages." The Joint Status Report also stated: "Even assuming, *arguendo*,

Landmark's and/or Amerisure's policy limits are exhausted, Landmark and Amerisure still both have a duty to indemnify Arch for these fees, costs, and interest pursuant to the 'Supplementary Payments' provisions in their respective policies, which require indemnification for attorneys' fees, interest, and costs awarded and which further provide that such indemnification 'will not reduce the limits of insurance' set forth in the policies." [*Id.*, p. 8].

### K.    Amerisure/Arch Settlement

On May 20, 2021, Amerisure and Arch filed a Notice of Settlement. [D.E. 334.]  As part of the settlement, Arch assigned to Amerisure Mutual Insurance Company all claims, subrogation rights, proceeds and recoveries that Arch on behalf of itself, and as Auchter's subrogee, indemnitee, and assignee, had, has, may have whether in the past, present or future, against Landmark that "relate in any way to the Final Judgment in the RAP Litigation, the RAP Litigation, the Coverage Action, Arch Indemnity Action [*Auchter* lawsuit], the Limited Release, and the RAP Settlement, including, but not limited to, any claims for the Window System . . . as set forth in the Final Judgment, and any claims for defense costs paid or incurred by Arch in the RAP Litigation, interest (pre- and post-judgment) …." [D.E. 336-1, pp. 2-3].

### L.    The Final Judgment

On November 16, 2022, the District Court granted Amerisure's Motion for Entry of Final Judgment and found that Amerisure was entitled

to attorneys' fees and costs from Landmark. [D.E. 342]. On November 17, 2022, the District Court entered the Final Judgment wherein it awarded the following amounts to Amerisure: $1,208,592.34 for reimbursement of defense costs paid to defend Auchter; (2) $364,554.19 as interest on the defense costs award; (3) $2,000,000 in indemnity under the Landmark Policies; (4) $728,602.68 in interest on the indemnity amounts owed by Landmark; and (5) $5,997,827.20 for reimbursement of Arch's defense costs awarded against Auchter. [D.E. 343, pp. 1-2].

## III.    Standard of Review

A district court's grant of summary judgment is reviewed *de novo. Hurlbert v. St. Mary's Health Care Systems, Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006).   A district court's evidentiary rulings are reviewed under an abuse of discretion standard. *Great Lakes Insurance SE v. Wave Cruiser LLC,* 36 F.4th 1346, 1352 (11th Cir. 2022).

## SUMMARY OF THE ARGUMENT

The District Court properly found that Landmark owed Auchter both a duty to defend and a duty to indemnify in the Underlying Action. The District Court's Final Judgment should be affirmed.

Landmark's EIFS Exclusion is inapt.  Initially, the exclusion does not apply to claims for "property damage" arising out of TSG's ongoing operations, which is the case here.   Next, the District Court correctly

12

recognized that where, as here, the " . . . coverage was not afforded to TSG the moment Landmark and TSG signed the TSG-Landmark insurance contract because according to Landmark, TSG worked on the exterior of the building, and the RAP-Auchter Contract, which was already in existence, provided that EIFS was 'used in any part' of the Project." [D.E. 157, p. 55]. As such, the District Court found that, "[c]overage in one part of an insurance policy is illusory when an exclusion in another part 'completely nullifies' the coverage", which is precisely what Landmark advocates. *First Mercury Insurance Co. v. Sudderth*, 620 F.App'x. 826, 830 (11th Cir. 2015) (quoting *Cynergy, LLC v. First American Title Insurance Co.*, 706 F.3d 1321, 1327 (11th Cir. 2013). [D.E. 157, p. 52]. Next, Landmark's attempt to skew Florida's duty to defend doctrine and the record evidence should not be countenanced. An insurer has a duty to defend its insured based upon the allegations of the complaint. *Bradfield v. Mid-Continent Casualty Co.*, 143 F.Supp.3d 1215, 1231 (M.D. Fla. 2015), *appeal dismissed*, (11th Cir. 15-15547 April 8, 2016); *Jones v. Florida Insurance Guaranty Association, Inc.*, 908 So.2d 435, 443 (Fla. 2005) (holding that the duty to defend is determined by comparing the allegations of the underlying complaint with the provisions of the policy). The Underlying Complaint does not allege any damage as respect to EIFS or reference the use of EIFS at the Project. [D.E. 65-1]. And, beyond the underlying allegations, it is clear that EIFS was never alleged or

found to be a cause of any property damage at the Project [D.E. 65-1 & 65-3]. Thus, there could be no exclusion of property damage caused by EIFS. Landmark fails to carry its burden in proving the application of the EIFS Exclusion.

In addition, Landmark attempts to utilize a narrow exception to Florida's duty to defend doctrine, which does not apply to this matter. Landmark does this despite arguing the application of Georgia law when it suits its purpose. Landmark's attempt to invoke Florida's narrow exception to its duty to defend doctrine fails by any measure.

Next, the District Court correctly found that Landmark owed Auchter a duty to indemnify for TSG's defective construction of the Window System. The Underlying Action found that there was damage to other property caused by the Window System, and that Auchter was found responsible for repairs due to such damage, which triggered Landmark's duty to indemnify Auchter as its insured.  Additionally, under *Carithers v. Mid-Continent Casualty Co.*, 782 F.3d 1240 (11th Cir. 2015), as per the District Court's analysis, because of damage caused to other property "the cost of repairing and replacing the defective Window System [also] constitutes 'property damage', resulting in coverage."  [D.E. 216, p. 43].  The District Court's evidentiary rulings in support of its conclusions are entitled to broad discretion and should not be disturbed. *Furcron v. Mail Centers. Plus, LLC*, 843 F.3d 1295, 1304 (11th

14

Cir. 2016) (finding that even a clearly erroneous evidentiary ruling will be affirmed if harmless).

Landmark also argues that the Limit of Insurance in its policies effectively eliminates any coverage from its second policy; that argument ignores the plain language of the policies, for which Landmark received premiums in exchange for twelve (12) months of coverage each. Landmark's *ex post facto* attempt to truncate the available coverage is untenable.

Next, none of the "business risk" exclusions apply when there is damage to other property outside the scope of the work, as is evident in the record. *Transcontinental Insurance Co. v. Ice Systems of America, Inc*., 847 F.Supp. 947, 950 (M.D. Fla. 1994).

Next, the District Court award of $5,997,827.20 to Amerisure as a Supplementary Payment under Landmark's policies was just and proper. Landmark was fully aware of the claim against it in the District Court proceedings and had ample opportunity to explore, and it did explore, the relief sought against it. And all predicate rulings, (*i.e.,* Landmark breached its duty to defend Auchter), were made in the District Court such that the District Court could properly award those amounts in addition to the policy limits via section 1.b. of the Landmark Policies (*i.e.,* Supplementary Payments provision). Landmark's contentions to the contrary are belied by the record and its own conduct.

Finally, Amerisure, as the prevailing party and assignee of Arch, was properly awarded its attorneys' fees and costs in the District Court. An adjudication as to the amounts owed Landmark has been stayed in the District Court during the pendency of this appeal, and is not ripe for consideration before this Court. For these reasons, the Final Judgment should be affirmed.

## ARGUMENT AND CITATION OF AUTHORITY

### I.    The EIFS Exclusion is Inapplicable

After analyzing seven separate briefs, totaling 91 pages, the District Court issued its 57-page Order denying Landmark's Motion for Summary Judgment on the EIFS Exclusion.   Furthermore, the Court's Order analyzed nineteen (19) decisions which interpreted the EIFS Exclusion, and, following its extensive analysis, found that the EIFS Exclusion in the Landmark Policies – when construed in the context of the facts and circumstances – is, for several reasons, inapplicable. The District Court's Final Judgment is cogent and supported by the record.

### A.    Landmark's EIFS Exclusion Does Not Apply to "Property Damage" Caused by TSG's Ongoing Operations

As per its plain language, Landmark's EIFS Exclusion applies, if at all, exclusively to "property damage . . . included in the 'products-completed operations hazard' and arising out of 'your [TSG] work.'" [D.E. 65-6, p. 32; D.E. 65-7, p. 34]. The EIFS Exclusion does not apply to any actual or alleged

"property damage" arising out of TSG's ongoing operations. Landmark's Policies were in effect from January 22, 2006 to November 1, 2007. [D.E. 65-6 & 65-7], and apply to "property damage" occurring during the Landmark Policy periods. [D.E. 65-6, p. 6; D.E. 65-7, p. 6].

Auchter and TSG entered into the Subcontract for work at the Project on June 15, 2006. [D.E. 65-2]. TSG did not work with, or install, EIFS at the Project. [D.E. 157, p. 40]. As of the initial water event, (*i.e.,* December 25, 2006), TSG's operations were ongoing ("[t]he December 25, 2006 water intrusion event occurred while TSG's work was not done and the building was not dried in." [D.E. 249-1, pp. 16-17]). TSG's operations at the Project continued throughout 2007. [D.E. 121-7, p. 25]. As TSG was performing operations at the Project during the Landmark policy periods, and the Landmark Policies only cover "property damage" occurring during Landmark's policy periods, all "property damage" sought from Landmark via Auchter [Landmark's additional insured] arose out of TSG's ongoing operations. *See Altman Contractors, Inc. v. Crum & Forster Specialty Insurance Co.*, 832 F.3d 1318, 1322 (11th Cir. 2016) (stating that interpretation of a policy is based on the policy's plain language, and the unambiguous policy language governs). Landmark's EIFS Exclusion – limited to "property damage . . . included in the 'products/completed operations hazard'" does not apply. *Hartford Accident & Indemnity Co. v.*

17

*Beaver*, 466 F.3d 1289, 1296 (11th Cir. 2006) (denying application of an exclusion where the insurer cannot demonstrate that the allegations are "cast solely and entirely within the policy exclusion . . . .").

>B.     <u>The District Court Properly Found That Landmark's Policies Provide Illusory Coverage</u>

TSG's scope of work for the Project was to: "[p]rovide all labor, material, equipment, supervision, transportation and anything necessary to furnish and install all Glass/Glazing, complete, as shown on the drawings for the referenced project in accordance with all contract documents and specifications all listed in Schedule A and other requirements of the Subcontract [ ] as hereinafter clarified." [D.E. 65-2, pp. 7-8]. TSG's scope of work did not include the installation of EIFS at the Project.

The Final Judgment in the Underlying Action found that EIFS was limited and used for aesthetic purposes. [D.E. 24-1, pp. 49-51]. The Final Judgment does not set forth that TSG constructed any EIFS. [D.E. 24-1, p. 29, paras. 60-63]. The Court explained in the Order on Landmark's Motion for Summary Judgment:

> There is no evidence in this record cited by the parties establishing that Landmark's insured, TSG, which was hired to install the windows on the Everbank Plaza Building, ever worked with, installed, applied, maintained or repaired or in anyway came in contact with EIFS.

[D.E. 157, p. 40].

The District Court succinctly explained the effect of Landmark's EIFS

Exclusion:

> By Landmark's reasoning, coverage was not afforded to TSG the moment Landmark and TSG signed the TSG-Landmark insurance contract because according to Landmark, TSG worked on the exterior of the building, and the RAP-Auchter Contract, which was already in existence, provided that EIFS was 'used in any part' of the Project. Thus, under Landmark's interpretation, Landmark purported to provide coverage and presumably accepted premiums to cover 'property damage' caused by TSG's defective work, while at the same time included in the Policies an exclusion that would immediately and inevitably eviscerate all coverage because EIFS was allegedly 'used' somewhere on the Project.
>
> \*      \*      \*
>
> To accept Landmark's interpretation of the EIFS Exclusion in this case would make Landmark's coverage for 'property damage' caused by TSG's defective work, as defined by the Policy Provisions, merely illusory, despite the fact that such coverage is expressly provided for by the Policies.

[*Id.*, pp. 55-56] (emphasis in original).

In regards to the law concerning illusory coverage, the District Court

provided the following in-depth analysis:

> '[c]overage in one part of an insurance policy is illusory when an exclusion in another part 'completely nullifies' the coverage.' First Mercury Ins. Co. v. Sudderth, 620 F. App'x 826, 830 (11th Cir. 2015) (quoting Cynergy, LLC v. First Am. Title Ins. Co., 706 F.3d 1321, 1327 (11th Cir. 2013), and citing Georgia case law). 'Exclusions that make coverage illusory are ineffectual.' First Mercury, 62 0 F. App'x at 830 (citing Maxum lndem. Co. v. Jimenez, 734 S.E.2d 499, 505 (Ga. Ct. App. 2012); Transp. Ins. Co. v. Piedmont Constr. Grp., LLC, 686 S.E.2d 824, 828 (Ga. Ct. App. 2009)).

19

[*Id.*, p. 52].  Landmark ignores these decisions in its appellate brief.  The

District Court observed further:

> When an endorsement is entered at the same moment as the
> policy it accompanies, rather than at a later time, <u>and</u> the
> endorsement purports to obliterate coverage, as opposed to
> merely clarifying, narrowing, or modifying the terms of
> coverage, we believe the approach more consistent with
> Georgia law is to read the endorsement and the terms of the
> policy as being coequal and thus to enforce the provision that
> grants coverage. Georgia rules of contract interpretation aim
> to protect purchasers of insurance from misleading contracts
> by placing the burden on the insurer to draft the insurance
> contract clearly.
>
> <u>Hooters</u>, 157 F. App'x at 209-10 (citing Georgia case law).

[*Id.*, p. 53].  Landmark does not discuss the *Hooters* decision or the

Florida law examined by the District Court.  As set forth by the District

Court:

> In Florida, "[a]n insurance policy cannot grant rights in one
> paragraph and then retract the very same right in another
> paragraph called an 'exclusion.'" <u>Tire Kingdom</u>, 573 So. 2d
> at 887.
> \*       \*       \*
>
> Likewise, the Middle District of Florida, in finding that an
> exclusion for vicarious liability 'swallowed' the insuring
> provisions and was illusory under the facts presented,
> observed:
>
>> Merely failing to cover a particular claim or occur
>> ence does not make coverage illusory. Instead,
>> '[w]hen limitations or exclusions completely
>> contradict the insuring provisions, insurance
>> coverage becomes illusory.' <u>Purrelli v. State</u>
>> <u>Farm  Fire & Gas. Co.</u>, 698 So.2d 618, 620 (Fla.

2d DCA 1997). When faced with such ambiguity, under Florida law, the court is to construe the contract in favor of coverage. <u>Id.</u>; <u>see</u> <u>N.Y. Life Ins. Co. v. Bird</u>, 12 So.2d 454, 457 (Fla. 1943).

'While a policy is to be interpreted to give effect to all of its provisions so far as possible, inconsistency of terms may permit, indeed require, the rejection of certain words and clauses in construction.' 2 Steven Pitt, <u>et al.</u>, Couch on Insurance§ 21:9 (3d ed. 2014). 'Accordingly, if two clauses are inconsistent and both were prepared by the insurer, the one which would defeat the insurance will be rejected or the one which affords the most protection to the insured will control and be given effect.' <u>Id.</u>

[*Id.*, pp. 53-54]. Landmark likewise did not address these decisions in its brief.

After the District Court denied Landmark's Motion for Summary Judgment, Landmark advocated in its Motion for Reconsideration for application of Florida law, relying upon *BITCO National Insurance Co. v. Old Dominion Insurance Co.*, 379 F.Supp.3d 1230 (N.D. Fla. 2019) (decided under Florida law). Landmark's reliance on BITCO is unavailing. *See Hartford Accident & Indemnity Co.,* 466 F.3d at 1296 (stating that an insurer relying on a policy exclusion "has the burden of demonstrating that the allegations of the [underlying action] . . . are subject to no other reasonable interpretation." … and that "ambiguity in policy language [is construed] liberally in favor of the insured and strictly against the insurer.").

*BITCO* is factually and legally distinguishable. There, the insured

worked on the exterior of the building where EIFS was being applied. In recognizing the limited application of the EIFS Exclusion that district court stated, "[t]he EIFS Exclusion only precludes coverage for a small subset of claims – those arising from West Coast Metal's work on the exterior of the building on which there is EIFS." *BITCO*, 379 F.Supp.3d at 1243. The district court further confirmed that, "the policy still affords coverage for claims arising from West Coast Metal's work on the exterior of buildings *without EIFS and to its work on a building's interior*." *Id.* (emphasis added). Landmark ignores these facts. As in *BITCO*, Landmark's EIFS Exclusion requires that the damage or injury falling within the ambit of the exclusion arise out of your [TSG's] work or product [D.E. 65-6, p. 32; D.E. 65-7, p. 34]. Unlike *BITCO*, Landmark's named insured [TSG] was not contractually bound to install EIFS, did not install EIFS at the Project and did not work on any part of the exterior that included EIFS. [D.E. 157, p. 40; D.E. 24-1, p. 29, paras. 60-63; TSG's scope of work (D.E. 65-2, pp. 7-8) did not include the installation of EIFS at the Project]. *BITCO*, rather, supports the District Court's decision to reject application of Landmark's EIFS Exclusion.

Rendering Landmark's reliance on *BITCO* even more tenuous, unlike in *BITCO,* here, the prime contract between RAP and Auchter required EIFS <u>prior</u> to the subcontract with Auchter and TSG [D.E. 157, p. 54]. Thus, as the District Court noted in rejecting Landmark's purported breadth and reach of

its exclusion, the Landmark Policies would have barred coverage the instant the TSG Subcontract was written [D.E. 157 at pp. 54-57]. The first Landmark Policy incepted on January 22, 2006 – months after the RAP-Auchter Prime Contract – which Landmark argues immediately activated its EIFS Exclusion [D.E. 92-1, p. 2]. The EIFS Exclusion in the Landmark Policies therefore, "swallowed up" the insuring provisions, which the court in *BITCO* found, (as stated in other decisions cited therein), to result in illusory coverage. *Id.*, 379 F.Supp.3d at 1243.

Landmark's reliance on *Henning Construction Co., LLC v. Phoenix Insurance Co.*, 570 F.Supp.3d 670 (S.D. Iowa 2021) is equally misplaced. There, the district court did not find the EIFS Exclusion illusory because the insured performed work on the interior of the project, which was outside the scope of the EIFS Exclusion. *Id.* at 679-80. In denying summary judgment in favor of the insurer, the district court found that the insurer could not meet its burden for the application of the EIFS Exclusion, which Landmark also cannot do here. *Id.*, at 681. Notably, the EIFS Exclusion at issue in *Henning* also differs from the exclusion contained in the Landmark Policies. The *Henning* decision clearly does not apply here.

*St. Paul Fire & Marine Insurance Co. v. Ohio Casualty Co.*, 2014 WL 1285824 (D. Ariz. Mar. 28, 2014), also supports affirming the District Court's holding. There, the insured engaged in the application of natural stucco, and

the insurer intended to exclude any coverage related to the stucco through the EIFS Exclusion. *Id.*, at *6-8. The district court found that the exclusion did not apply where the insured was not applying EIFS on the project. *Id.*, at *8. These facts are identical to the facts in the instant case, as the RAP-Auchter Prime Contract – upon which Landmark relies to support application of its EIFS Exclusion – was entered into on September 21, 2005 [D.E. 92-6], before the Auchter-TSG Subcontract which was entered into on June 15, 2006 [D.E. 65-2]. Further, TSG was not involved with EIFS at the Project. Thus, as in *St. Paul Fire & Marine*, Landmark's Policies – by operation of the EIFS Exclusion – provide illusory coverage that Landmark now seeks to leverage against its insured. *See Southern-Owners Insurance Co. v. Easdon, Rhodes & Assoc.*, 872 F.3d 1161, 1164 (11th Cir. 2017) (stating that policy language is interpreted liberally in favor of the insured and strictly against the insurer). Landmark – as the District Court determined – falls woefully short in demonstrating the application of the EIFS Exclusion.

      C.    <u>The District Court Properly Found That the EIFS Exclusion Does Not Bar Landmark's Duty to Defend Auchter</u>

An insurer has a duty to defend its insured based upon the allegations of the complaint. *Bradfield*, 143 F.Supp.3d at 1231. If the complaint alleges facts that potentially bring a suit within coverage, then the insurer must

provide a defense. *Jones*, 908 So.2d at 443 (holding that the duty to defend is determined by comparing the allegations of the underlying complaint with the provisions of the policy). An insurer shall be excused from a defense obligation *only* if the underlying complaint's allegations fall exclusively within a policy exclusion. *Trovillion Construction and Development, Inc. v. Mid-Continent Casualty Co.*, 2014 WL 201678, *1 (M.D. Fla. Jan. 17, 2014). Here, the four-corners of the Complaint in the Underlying Action do not allege any damage as respect to EIFS, or reference the use of EIFS at the Project. [D.E. 65-1]. The EIFS Exclusion, thus, is inapplicable.

Landmark makes two pronouncements in attempting to reach its desired end, *to wit*: "EIFS was utilized on the Project" and "TSG's scope of work was entirely limited to the exterior of the project as the subcontractor responsible for installing the windows/curtain wall system." [Landmark Brief, p. 36]. However, none of these "facts" relied upon by Landmark were alleged in the Underlying Complaint – the document driving the duty to defend analysis. Landmark does not set forth that EIFS caused any "property damage" at the Project, because no such facts were alleged. Rather, Landmark is requesting that this Court make the unsubstantiated leap that the mere existence of EIFS activates the EIFS Exclusion despite no allegation in the pleadings supporting its conclusion. The District Court, as Florida law proscribes, elected not to do so.

*Trinity Universal Co. v. Employer's Mutual Casualty Co.*, 592 F.3d 687 (5th Cir. 2010) (applying Texas law), relied upon by Landmark, supports Amerisure's position.  There, the court held that a similar EIFS Exclusion did not apply because the complaint alleged "property damage" that did not stem from EIFS.  The RAP Complaint is similarly devoid of any link or allegation between EIFS and any property damage.  Thus, *Trinity* provides additional guidance for affirming the District Court. *See also Insurance Corporation of Hannover v. Skanska USA Building, Inc.*, 2008 WL 2704654 (S.D. Tex. July 3, 2008) (finding that the alleged damage within the complaint could be unrelated to EIFS and, therefore, the EIFS Exclusion did not apply); *St. Paul Fire & Marine Insurance Co.*, 2014 WL 1285824 (refusing to apply an EIFS Exclusion where the alleged damage could not be attributed solely to the EIFS).  Here, Landmark cannot satisfy its burden of proving the application of its exclusion; the District Court's finding in this regard should not be disturbed.

> D.    The District Court Correctly Found That the EIFS Exclusion Does Not Bar Landmark's Duty to Indemnify Auchter

In regards to the duty to indemnify, it is of paramount significance that EIFS was never alleged or found to be a cause of any property damage at the Project.  [D.E. 65-1 & 65-3].  In *Pine Oak Builders, Inc. v. Great American Lloyds Insurance Co*., 292 S.W.3d 48 (Tex. App. 2006), *aff'd in part, rev'd in*

*part,* 279 S.W.3d 650 (Tex. 2009), relied upon by Landmark, the insured contractor sought a defense and indemnity under general liability policies that contained EIFS Exclusions. The court found that the EIFS Exclusion applied because the allegations in the underlying homeowner's complaint alleged that the improper installation of EIFS caused water damage, which is not the case in this matter. *Id.*, 279 S.W.3d at 652. Here, there are no such allegations, findings or record reference to support Landmark's conjecture.

In *Capitol Specialty Insurance Corp. v. Yuan Zhang*, 2012 WL 1252638 (W.D. Wash. Apr. 13, 2012), as the District Court described in the Order on Landmark's Motion for Summary Judgment [D.E. 157, pp. 49-50], the insured contractor performed exterior siding work to an apartment building, work which did not involve EIFS. *Id.* at *2. EIFS was installed on the building before the property owner purchased the building. *Id.* at *3. Furthermore, the property owner's contract with the insured did not specify any repairs to any EIFS. *Id.* The property owner claimed that the insured siding contractor caused water damage at the building, and the contractor's insurer argued that the "Any Work" Provision of the EIFS Exclusion applied to exclude coverage because there was EIFS on the building. The court did not apply the exclusion, stating:

> Capitol's [the insurer] argument that the language of the exclusion bars coverage for property damages arising out of an insured's exterior work if <u>any prior individual</u> used or installed the EIFS present on the structure, no matter how

> small that EIFS area is, and no matter how unrelated that EIFS
> was to the insured's work and the resulting damage, is
> unreasonable as a matter of law.

*Id.* at *3 (emphasis in original). Similarly here, Landmark attempts to apply the EIFS Exclusion due to mere use of EIFS at the Project by another, and in an area where TSG was not working.

Landmark concludes in its brief that "[t]he Final Judgment in the underlying action makes clear that EIFS was utilized on the Project and was constructed in a defective manner"; and that "[t]he Final Judgment determined that Auchter subcontracted the window walls, curtain walls, and storefront windows to TSG." [Landmark Brief at p. 43]. These threadbare fragments do not support Landmark's effort to sidestep its indemnity obligation. Landmark's argument on EIFS as applied to indemnity fails for the same reason as its attempt to deny a defense: it has demonstrated no causal link between EIFS and any damage at the Project. Landmark, thus, cannot sustain its burden in demonstrating the application of the EIFS Exclusion. *See*, *e.g.*, *Ajax Building Corp. v. Hartford Fire Insurance Co*., 358 F.3d 795, 799 (11th Cir. 2004) (noting that "in Florida exclusionary clauses are construed more strictly than coverage clauses . . . ."). The District Court correctly refused to apply the EIFS Exclusion. Its decision should be upheld.

## II. Landmark's Attempt to Expand the Duty to Defend Doctrine Should be Rejected

Landmark – again advocating Florida law when it seemingly serves its purpose – next argues for a restriction of Florida's broad duty to defend standard in a way that is not recognized and does not apply. Rather than confining its analysis as to its obligation to defend to the underlying allegations as per Florida law, Landmark ignores the underlying allegations which trigger its duty to defend, in order to interject unsupported legal and factual conclusions. Landmark's self-serving position is not sanctioned by any court, and should be rejected.

An insurer's duty to defend is determined by examination of the policy and the complaint in the underlying action. *Hoover v. Maxum Indemnity Co.*, 291 Ga. 402, 407-08, 730 S.E.2d 413, 418 (2012); *Jones,* 908 So.2d at 443. If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action. *Lawyers Title Insurance Corp. v. JDC (America) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995) (applying Florida law) ("The duty [to defend] arises when the relevant pleadings allege facts that fairly and potentially bring the suit within policy coverage."). The insurer owes a duty to defend all claims covered under a policy, even those that are groundless, false, or fraudulent. *Southern Guaranty Insurance Co. v. Dowse*, 278 Ga. 674, 676, 605 S.E.2d

29

27, 29 (2004); *Jones*, 908 So.2d at 443.

The Underlying Complaint alleges water intrusion events at the Project that occurred throughout the duration of the Landmark policy periods. The Underlying Complaint alleges water intrusion events on December 25, 2006 [D.E. 65-1, para. 14], and then on September 17, 2007 where a tenant of the Project experienced substantial damage due to water intrusion [*Id.*, para. 22]. The Underlying Complaint further alleges that substantial water intrusion continued at various locations through 2007 [*Id.*]. Landmark's arguments to the contrary are erroneous and distort the record.

Landmark argues that a determination of whether an insurer owes a duty to defend involves a comparison of: "the allegations of the complaint, as well as the facts supporting those allegations, against the provisions of the insurance contract." [*See* Landmark Brief at p. 45, quoting *Evanston Insurance Co. v. Littlejohn*, 2017 WL 6373992, *5 (N.D. Ga. Sep. 6, 2017)]. This statement from *Littlejohn* is not an exception to the duty to defend, and it does not allow for consideration of something that is unpled. Additionally, the *Littlejohn* decision did not rely on any unpled facts in its analysis. Landmark finds no refuge in *Littlejohn*.

Florida courts have rejected Landmark's attempt to contest or discredit underlying allegations when evaluating the duty to defend. *Jones*, 908 So.2d at 443 (allegations in complaint control even when the actual facts are

inconsistent with the allegations). Landmark does not contest that its policies provide "primary" coverage to Auchter as an additional insured. Nor does it contest that the Amerisure Policies provide excess coverage to Auchter. Landmark instead argues that it owes no duty to defend because the factual underlying allegations triggering a duty to defend should simply be disregarded. Landmark errs again.

Landmark argues that *had* RAP added to its Amended Complaint in the Underlying Action that the December 2006 water intrusion event was paid as a builder's risk claim, it would have negated coverage. Landmark's position is not credible. No Florida, or any, case (and Landmark has not cited to any) permits an insurer to ignore its defense obligation by presuming the invalidity of covered allegations, and/or by arguing additional facts should have been plead in the underlying complaint as a basis to deny coverage. In fact, this Court has found the opposite to be true. *Lawyers Title Insurance Corp.*, 52 F.3d at 1580 ("insurer must defend even if facts alleged are actually untrue or legal theories unsound"); *see also Jones,* 908 So.2d at 443 (allegations in complaint control even when the actual facts are inconsistent with the allegations). Landmark also ignores that the Underlying Complaint alleges water intrusion events in addition to the December 2006 water intrusion. [D.E. 216, p. 45, n. 15].

Here, the Complaint in the Underlying Action pleads sufficient facts to

trigger a duty to defend under Landmark's 2006 and 2007 policies, which Landmark acknowledged on multiple occasions.  [D.E. 24-8, 24-9, 24-10]. Neither Landmark's "presumptions" [D.E. 55, p. 22, para. 7], nor its second-guessing of the underlying plaintiff's pleading rise to the level of being manifestly obvious to preclude what is otherwise an admittedly covered claim. *First Specialty Insurance Corp. v. 633 Partners*, *Ltd.*, 300 F.App'x. 777, 786-87 (11th Cir. 2008) (rejecting argument that insurer could use extrinsic evidence to depart from Florida's exclusive focus on the allegations of complaint).  And, even if Landmark could interpose extrinsic evidence to disregard underlying allegations, the Underlying Complaint arguably pleads damage caused by TSG's work beyond December of 2006.  [D.E. 65-1, paras. 22, 43(k)]. None of the cases cited by Landmark address a situation where an insurer attempts to contest its previously-acknowledged defense obligation by – after judgment was entered against its insured – criticizing the pleading in the underlying complaint.

Landmark's reliance on *Composite Structures, Inc. v. Continental Insurance Co.*, 560 F.App'x. 861 (11th Cir. 2014) is misplaced. There, the underlying complaint alleged claims within a pollution exclusion, and the Court looked to extrinsic evidence to address notice to the insurer – which was undisputed by the parties and was not addressed in the complaint – to determine if an exception to the exclusion applied. *Composite Structures* is

distinguishable. Here, the underlying complaint admittedly alleges facts bringing the claim within coverage, yet the insurer seeks to rely on the presumed effect of a third party settlement to discredit or ignore the allegations. *Baron Oil Company v. Nationwide Mutual Fire Insurance Co.*, 470 So.2d at 814 (a duty to defend exists "even though it is ultimately determined that the alleged cause of action is groundless and no liability is found within the policy. . . .").

Landmark relies on *David R. Farbstein, P.A. v. Westport Insurance Corp.*, 2017 WL 3425327 (S.D. Fla. Aug. 9, 2017). However, *Farbstein* too is inapt. There, the court rejected the use of deposition transcripts and other extrinsic facts stating that use of such facts "should be reserved for 'special circumstances' in which extrinsic 'facts are undisputed, and, had they been pled in the complaint, they clearly would have placed the claims outside the scope of coverage.'" *Id.* Notably, the court relied on the allegations of the underlying complaint to determine the application of a prior knowledge exclusion. *Id.* at *8-9. In *Diamond State Insurance Co. v. Boys' Home Association, Inc.*, 172 F.Supp.3d 1326, 1340 (M.D. Fla. 2016), consistent with the majority of cases in Florida, the court found that only in "exceptional cases in which courts have crafted an equitable remedy when it is manifestly obvious to all involved that the actual facts placed the claims outside the scope of coverage", is it appropriate to look outside the complaint, quoting *First*

*Specialty Insurance Corp.*, 300 F.App'x. 777, 785 (11th Cir. 2008).

In *Steadfast Insurance Co. v. Celebration Source, Inc.*, 240 F.Supp.3d 1295, 1303 (S.D. Fla. 2017), *aff'd*, 730 F.App'x. 865 (11th Cir. 2018), as in *Higgins v. State Farm Fire & Casualty Co.*, 894 So.2d 5 (Fla. 2005), the courts allowed extrinsic evidence regarding interpretation of a notice condition in the policies at issue, unlike here. Moreover, in *Sinni v. Scottsdale Insurance Co.*, 676 F.Supp.2d 1319 (M.D. Fla. 2009), the court looked outside the pleadings in the underlying complaint because the underlying plaintiff was receiving workers compensation benefits and attempting to receive a double recovery under the commercial general liability policy at issue. Finally, in *Empire Fire and Marine Insurance Co. v. Span*, 2021 WL 2255127, *5 (S.D. Fla. June 3, 2021), the court did not look past the allegations of the underlying complaint which did not allege that the driver of a vehicle was intoxicated, which if alleged would bar any coverage under the liability policy. The court found that the driver's condition is not extrinsic evidence that would fit into one of the two very narrow exceptions to the duty to defend standard under Florida law. *Id.*

Here, the information regarding a payment in relation to the December 25, 2006 water intrusion is not "manifestly obvious to all involved" that it would place the claim outside coverage. *Nationwide Mutual Fire Insurance Co. v. Keen*, 658 So.2d 1101, 1103 (Fla. 4th DCA 1995), *rev. denied*, 553

So.2d 1166 (Fla. 1989) (finding that use of extrinsic evidence is only allowed when "the claimant makes no attempt to plead facts creating coverage or suggest the existence of evidence establishing coverage"). In addition, even if Zurich's involvement in payment regarding the December 25, 2006 water intrusion were considered, there is no undisputed evidence that Zurich paid for all damage caused by the December 25, 2006 water intrusion. Moreover, this does not affect, in any manner, the allegations of water intrusion in paragraph 22 of the Underlying Action's Amended Complaint which fall within the ambit of the Landmark Policies. [D.E. 65-1, para. 22]. "If there is any doubt about the insurer's duty to defend, then the ambiguity must be resolved in favor of the insured." *Princeton Excess & Surplus Lines Insurance Co. v. Hub City Enterprises, Inc.*, 808 F.App'x. 705, 708 (11th Cir. 2020). Here, there is more than doubt, and the District Court's finding that Landmark owes Auchter a duty to defend should be affirmed.

### III.    Landmark Owes a Duty to Indemnify Auchter

Landmark argues that there was no "property damage" caused by the defective Window System constructed by TSG at the Project. The District Court – in having scoured the record and made evidentiary findings to the contrary – disagreed, finding that the underlying record established that alleged water intrusion was caused by the Window System. [D.E. 216, p. 39]. Landmark continues to reject the damage to non-defective work caused by the

35

alleged water intrusion, and to ignore that "Mr. Baker [Mark Baker, the president of IBA Consultants who inspected the Window System, D.E. 24-1, p. 14, para. 4] testified that 28 percent of the windows he observed allowed water to leak into the Building beyond the windows sills", and that testimony was presented showing that "the leaking Window System was the source of ongoing water intrusion on 'multiple floors' including those not adjacent to the roof, and that 'the water intrusion problem continues.'") [D.E. 216, p. 39]. The Underlying Trial Court (Judge Jay) did not accept testimony that the building's water intrusion came exclusively from sources other than the windows, including the roof, noting that testimony regarding the roof issues had been corrected and the leaking Window System was the source of water intrusion on multiple floors. [D.E. 24-1, pp. 40, 42, 44-45]. The District Court noted that Judge Jay:

> thoroughly chronicled the extensive evidence of water intrusion into the Building over a period of years . . . . Judge Jay isolated the cause of the water intrusion to the defective Window System . . . [and that] the water intrusion through the Window System extended beyond the window sills. . . .

[D.E. 216, p. 42]. The District Court's evidentiary findings are entitled to deference. *Great Lakes Insurance SE*, 36 F.4th at 1353 ("We review a district court's evidentiary rulings for abuse of discretion.").

The District Court also found that "the state court record is sufficiently developed and establishes that there is no genuine dispute of fact that water

intrusion through the defective Window System caused damage to otherwise non-defective tangible property in the form of walls, ceiling tiles and carpet, unrelated to the Window System or the work that TSG was hired to do . . . ." [D.E. 216, p. 43]. Under *Carithers*, as per the District Court's analysis, because of the damage caused to other property "the cost of repairing and replacing the defective Window System [also] constitutes 'property damage', resulting in coverage." [*Id.*].

Moreover, the record in the Underlying Action includes additional evidence of TSG's construction of the defective Window System and the property damage that it caused. Steve Main of Rolland, DelValle & Bradley, the project manager for the architect, testified that he noted water intrusion in January of 2007 and into February of 2007. [D.E. 168-9, pp. 1398:14-1400:17]. Mr. Main testified that he observed the work of TSG while it was installing the Window System [*Id.* at pp. 1439:16-1440:4] and that there was leaking while the Curtain Wall System was being installed. [*Id.* at p. 1440:14-19]. Mr. Main further testified that he received calls from tenant contractors in January 2007, after the 2006 Christmas water event, of water intrusion on the Project along the spines of the floors. [*Id.*, at pp. 1396:14-1399:23]. Mr. Main testified that water continued to enter the Project along the curtain wall into the building from ceiling areas from January 2007 into February and March of 2007. [*Id.*, at pp. 1401-02]. Also, contrary to Landmark's position,

Mr. Main testified that he was looking at the glazing window installation as early as July of 2006 because he noted in his report that three glazing panels on the "west side of the 11th floor … have been installed incorrectly or manufactured incorrectly and visually [had] a different appearance from the other installed glazing at the 11th and 12th floor." [D.E. 168-10, p. 1505:6-13]. Mr. Main further testified that water intrusion continued into 2007 and 2008. [D.E. 168-9, pp. 1408-18].  None of this is addressed, much less mentioned, by Landmark.  Conversely, all of this was examined thoroughly by the District Court.

Mr. Baker also opined to the alleged defective condition with TSG's work as of the time of installation. He testified that the design specifications required TSG to install and provide a Window System where the internal gutters (*i.e.*, a weep system) drained and/or vented the water out of the building. [D.E. 168-4, pp. 657:21-658:4; 691:14-692:10].  Mr. Baker testified that the Window System, as installed by TSG, deviated from the shop drawings and product approval documents, and the perimeter sealant, as installed, blocked the weep holes "which causes water to build up potentially in the gutter but it also creates a path into the building behind the sealant." [*Id.*, pp. 719:2-720:25; D.E. 168-2, pp. 729:7-18; 733:1-24].  Mr. Baker further testified that TSG installed the wrong gaskets, which reduced performance and made them susceptible to shrinkage. [D.E. 168-2 pp. 761:16-

762:19; 762:20-765:6]. The installation of the wrong gaskets allowed water into the Window System, which coupled with the blocked weep holes resulted in water intrusion. [*Id.*, pp. 766:5-767:2; 734:9-735:23; 742:12-743:25; 755:10-757:2].

> The Underlying Trial Court also found that:
>
> Throughout the summer of 2007, there were continued incidences and reports of water intrusion into the building.' [D.E. 116-13, at 14]. Arch retained a company to investigate the water leaks caused by the Window System and 'undertook sporadic efforts' to repair the leaks, which involved 'minor patching and caulking of certain areas . . . .' [D.E. 116-13, at 14, 19]. 'Despite these efforts, RAP continued to experience water intrusion problems with the building. In an attempt to catalogue these events, RAP started maintaining a leak log to identify the areas of water intrusion.'

[D.E. 24-1, p. 14]. The Underlying Trial Court also found that "[t]he overwhelming evidence established that the Everbank building has leaked on multiple floors since RAP's tenants first took occupancy." [*Id.*, p. 42.] Tenants began to move into the building in April 2007 [*Id.*, p. 35]. The Underlying Trial Court specifically rejected the analyses of other experts "who blamed the water intrusion on areas such as the roof and exterior wall panels", finding these experts' opinions to be unpersuasive and unreliable. [*Id.*, pp. 42–45]. Therefore, the Underlying Trial Court determined that the Window System was the cause of the water intrusion, and included in the Final Judgment against TSG in the Underlying Action ". . . the monies needed to

perform interior repairs in connection with removing and replacing the windows . . . ." [*Id.*, p. 84.]  The Underlying Trial Court in the Final Judgment referenced the interior repairs as those that ". . . would be necessary for the ceilings and drywall when removing and reinstalling the windows."  [*Id.*, p. 45.]

Landmark's reliance on general principles of Georgia law in an attempt to demonstrate that the application of Georgia law warrants a different result is unfounded.  The District Court correctly found no conflict between the laws of Florida and Georgia and applied Florida law. Indeed, Florida and Georgia law are aligned in holding that CGL policies do not provide coverage for the costs incurred to repair a contractor's faulty workmanship, and that faulty workmanship that causes damage to other property constitutes "property damage" caused by an "occurrence". *American Empire Insurance Co. v. Hathaway Development Co*., 288 Ga. 749, 751-52, 707 S.E.2d 369, 371-72 (2011); *SawHorse v. Southern Guaranty Insurance Co.,* 269 Ga.App. 493, 498-499(2) (a), (b), 604 S.E.2d 541, 546 (2004); *U.S. Fire Insurance Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 889-90 (Fla. 2007).  Landmark's claim that there is a "more strict definition of property damage" under Georgia law (Landmark Brief at p. 52) than under Florida law does not hold water.  Notably, Landmark cites no authority to support this statement.  Further, under Georgia and Florida law, exclusions in insurance policies are strictly

construed against the insurer and in favor of coverage. *Richards v. Hanover Insurance Co.*, 250 Ga. 613, 615, 299 S.E.2d 561, 563 (1983); *Great American Alliance Insurance Co. v. Anderson*, 847 F.3d 1327, 1331 (11th Cir. 2017). Landmark's unsupported suggestion that Georgia law may warrant a different result is baseless. No Georgia case contradicts Florida law, much less this Court's holding in *Carithers.* Indeed, Landmark does not discuss the purported conflict between the laws of Georgia and Florida. And, even apart from the application of *Carithers,* Landmark owes primary coverage in connection with the District Court's Order on the duty to indemnify in relation to TSG's defective Window System under Georgia law.

Finally, Landmark mischaracterizes *Transportation Insurance Co. v. Piedmont Construction Group, LLC*, 301 Ga.App. 17,19, 686 S.E.2d 824, 827 (2009), where the court did not apply two "business risk" exclusions, stating ". . . if the court finds that the payment of proceeds results from a negligent act causing damage above and beyond the original contractual obligations or to other property, the business-risk exclusions do not apply and the insurance company should pay the claim." That is the situation here; the District Court correctly found Landmark owes a duty to indemnify.

A. <u>Landmark's Business Risk Exclusions Do Not Support Its Attempt to Undo the Final Judgment</u>

Landmark also argues that business risk exclusions in its policies

41

should apply to bar coverage, but fails to identify any such exclusions or analyze how each exclusion would apply to exclude coverage. Landmark's argument should thus fail.

The District Court stated that the business risk exclusions do not apply if the evidence "establishes damages to other property." [D.E. 216, p. 52], *citing to Ice Systems of America, Inc*., 847 F.Supp. at 950; *Pinkerton & Laws, Inc., v. Royal Insurance Company of Am*., 227 F.Supp.2d 1348, 1354 (N.D. Ga. 2002) (construing Florida law); *see also Piedmont Construction Group, LLC,* 301 Ga.App. 17, 686 S.E.2d 824 (2009) (finding that the "business risk" exclusions do not apply when there is damage to other property outside the scope of the contract). In finding damage to property caused by TSG's operations, the District Court correctly refused to apply the exclusions.

The cases cited by Landmark are inapposite. This very issue was addressed in *Piedmont Construction Group, LLC,* 301 Ga.App. 17, 686 S.E.2d 824, which distinguished the case of *Sapp v. State Farm Fire & Casualty Co.*, 226 Ga.App. 200, 486 S.E.2d 71 (1997) – which was cited by Landmark. In *Piedmont Contstruction Group LLC*, the insured contracted with a college to renovate a building, and a plumbing subcontractor accidentally started a fire that resulted in major damage. *Id.*, 301 Ga.App. at 18, 686 S.E.2d at 826. The court found that damages were not limited to repairing or replacing the work that was contracted due to negligent installation, but were to other parts of the

42

building.  Thus, the court held that exclusions j(5) and j(6) did not apply to exclude coverage.  The appellate court rejected the application of *Sapp* as the damages sought there were limited to the contractor's work.  Here, the District Court found: "[t]he evidence does not support a finding that water damage to the tenants' carpeting, ceiling tiles and drywall constituted property damage to Auchter's [or TSG's] 'work,' and establishes 'damage to property other than the work performed by [TSG].'" [D.E. 216, p. 57].  As the Court noted, "[w]ater intrusion damage from leaking windows is not a 'business risk' as contemplated by 'Your Work' and the 'Property j(5) and j(6) Exclusions,' assumed by Auchter and its subcontractor TSG for which it agreed to exclude insurance indemnity protection." [*Id.*, p. 58].  Landmark fails to identify which exclusions it refers to as business risk exclusions (and it should not be allowed to identify them for the first time in its reply).  The cases cited by Landmark do not warrant deviating from Florida law, or the findings contained in the Final Judgment.

Next, *Auto Owners Insurance Co. v. Gay Construction Co.*, 332 Ga.App. 757, 774 S.E.2d 798 (2015) – as cited by Landmark – actually supports affirming the Final Judgment. There, the court interpreted several exclusions in relation to a claim for additional insured coverage by a general contractor whose subcontractor allegedly constructed a terrace above a restroom and other areas defectively.  The court in *Gay Construction Co.*

43

found that ". . . there was no claim for damage to nondefective property not covered by GCC's [additional insured] or Dai-Cole's [named insured] scope of work" and thus the business risk exclusions barred any coverage. *Id.*, 332 Ga.App. at 760, 774 S.E.2d. at 800. The court also quoted *QBE Insurance Co. v. Couch Pipeline & Grading, Inc.*, 303 Ga.App. 196, 199, 692 S.E.2d 795, 797 (2010): "*Business risk exclusions are designed to exclude coverage for defective workmanship by the insured builder causing damage to the construction project itself.*" (emphasis in original). *Id.* That is not the case here. The District Court found damage to property other than TSG's work as a result of TSG's work, which is precisely what the business risk exclusions, as stated in *Gay Construction Co.*, do not exclude.

Landmark's reliance upon *Gentry Machine Works, Inc. v. Harleysville Mutual Insurance Co.*, 621 F.Supp.2d 1288 (M.D. Ga. 2008), is also misplaced. In *Gentry Machine Works, Inc.*, the court interpreted exclusions, in relation to allegedly defective work on boilers, for "your work" and "your property". The court held, as in *Gay Construction Co.*, that the exclusions do not apply to exclude coverage for ". . . 'property damage' to the boilers and their component parts, other than the pedestals, directly caused by pedestal failure but unrelated to pedestal repair." *Id.*

Landmark also attempts to create a distinction, not set forth in any jurisprudence, by stating that Georgia law looks to the value of damage to

other property while Florida law looks to the damage to other property. To the extent this exists, this is a distinction without a difference, as under both Georgia and Florida law, there is coverage for damage caused to property other than the insured's work (*American Empire, etc. Insurance Co. v. Hathaway Development Co*., 288 Ga. 749, 751, 707 S.E.2d 369, 371 (2011); *J.S.U.B., Inc.*, 979 So.2d at 889-90).

### B.    Landmark's No "Occurrence" Argument is Untenable

Landmark next argues that there was no "occurrence" causing "property damage" during its policy periods. Landmark's contention is incredible. The Florida Supreme Court explained in *J.S.U.B., Inc.*, 979 So.2d at 891, that ". . . faulty workmanship that is neither intended nor expected from the standpoint of the contractor can constitute an 'accident' and thus an 'occurrence' under a post–1986 standard form CGL policy." The Landmark Policies are post-1986 standard form CGL policies. [*See* D.E. 65-6, p. 6 & D.E. 65-7, p. 6 (copyright 2000)]. Georgia and Florida hold that an insurer owes an indemnity obligation under a CGL policy where faulty workmanship damages other property. *Maxum Indemnity Co. v. Jiminez,* 318 Ga.App. at 671, 734 S.E.2d at 503 ("[a]subcontractor's faulty workmanship that causes unforeseen or unexpected damage to other property constitutes an 'occurrence' under a CGL policy."); *J.S.U.B., Inc.* 979 So.2d at 891. As it did in the District Court, Landmark ignores the evidence of property damage

during its two policies' periods. The District Court noted the underlying testimony of Mark Baker, Mary Flynn (the director of administration with Harden & Associates, D.E. 160-2, pp. 6-7) and others noting that the Window System allowed water to leak into the Project and caused damage to other parts of the Project such as "saturated walls", ceiling tiles, carpeting and drywall.  [D.E. 216, pp. 40-41].  Landmark does not cite any Georgia case rejecting or criticizing (much less even mentioning) *Carithers*.  Indeed, in *Trehel Corp. v. Owners Insurance Co.*, 2014 WL 11820250 *3 (N.D. Ga. Nov. 19, 2014), the court held that if there is some damage to property other than the work at issue, as here, there is coverage.

Also, as in the District Court, Landmark makes a disjointed trigger argument in purported support of its attempt to avoid the application of both of its policies.  Georgia law does not support Landmark's position.  Indeed, no Georgia decision adopts a manifestation trigger urged by Landmark, and the federal decisions interpreting Georgia law under policy provisions similar to the Landmark Policies seemingly adopt a continuous trigger – which is consistent with the District Court's decision as to the duty to indemnify.  *See Arrow Exterminators, Inc. v. Zurich American Insurance Co.*, 136 F.Supp.2d 1340, 1349 (N.D. Ga. 2001); *Boardman Petroleum, Inc. v. Federated Mutual Insurance Co.*, 926 F.Supp. 1566, 1577 (S.D. Ga. 1995), *rev'd on other grounds*, 150 F.3d 1327 (11th Cir. 1998); *Briggs & Stratton Corp. v. Royal*

*Globe Insurance Co.*, 64 F.Supp.2d 1346, 1349-50 (M.D. Ga. 1999).  Given the District Court's finding that the faulty Window System caused water intrusion throughout the periods of the Landmark Policies, coverage is triggered under both Landmark Policies. [D.E. 307, p. 4].  Landmark's trigger argument is, at best, a red herring.

Landmark also speculates, without any supporting authority, as to the meaning of "window opening", which is neither sufficient to support its claim of no "occurrence" nor enough to reverse the District Court's Final Judgment.

Landmark further conjectures that there could only be one occurrence in relation to the Window System installed by TSG.  This position, however, ignores the multiple instances of water intrusion from the allegedly defective work of TSG and resulting damage during Landmark's two policy periods, as referenced above, and at D.E. 121-7 at p. 24 (*see also* D.E. 24-1 at p. 15, documenting water intrusion at the Project during the summer of 2007).

C.    Landmark's Limits of Insurance Argument is Unfounded

The problem (one of several) with Landmark's "limits of insurance" argument – for which Landmark cites no authority – is that Landmark issued two policies.  In its brief, Landmark states ". . . the 'Limits of Insurance' talks of it applying separately to each 'consecutive annual period,' unless the 'policy period is extended after issuance for an additional period of less than 12 months.' If that happens, the 'additional period' is deemed part of the 'last

preceding period for purposes of determining the Limits of Insurance.'"
[Landmark Brief, p. 60.]  Again, Landmark's brief is devoid of any support
for this argument.  The second Landmark Policy was not an extension of the
first policy, but a separate policy with a separate policy number and policy
period. [D.E. 65-7, p. 2]. And, the second policy was not issued for a period
of less than twelve months; rather, it was issued for a twelve (12) month
policy period and amended by endorsement after issuance to less than a
twelve month period ("Processed" on November 13, 2007) [*Id.*, pp. 2, 49].
Both Landmark Policies are clearly implicated.

Further undermining its position, the declarations page in the second
Landmark Policy describes the policy as a "renewal" – not an "extension,"
and a new policy number was issued.  [D.E. 65-7, p. 2.]  The District Court
found that if Landmark intended to extend the coverage period of its first
policy in its second policy, ". . . the parties could have drafted something to
that effect." [D.E. 307, p. 5]. Instead, Landmark issued a new insurance policy
(under a new policy number) that was self-contained and without need to
resort to any other policies.  To the extent that existence of the phrase
"renewal" creates ambiguity, the ambiguity is resolved in favor of extending
coverage and consistent with what the insured would understand it to mean in
this context.  *See AA Action, Inc. v. Transcontinental Insurance Co.*, 2009 WL
10664949, *3 (N.D. Ga. 2009), *aff'd*, 360 F.App'x 45 (11th Cir. 2010).  [D.E.

307, pp. 4-5.] *See also Swire Pacific Holdings, Inc. v. Zurich Insurance Co.*, 845 So.2d 161, 165 (Fla. 2003) (same). The District Court found that there could not be only one policy's limit of insurance triggered here. *Id.* Landmark seeks to open the door to accept premiums for a twelve (12) month policy and then later reduce the policy period to eliminate any coverage that it provides. Landmark's attempt to subvert the language in its policies to avoid the coverage that its second policy provides, for which it received premiums, should not be endorsed.

## IV. Amerisure Was Properly Awarded $5,997,827.20 and Interest in the Final Judgment

Landmark argues that it did not have an opportunity to be heard as to the award against it and in favor of Amerisure of $5,997,827.20. The record belies this contention. Moreover, all predicate findings were made to award this amount as a "Supplementary Payments" under Landmark's Policies.

Significantly, Landmark filed an eleven (11) page Motion to strike the Notice of Final Judgment which included the $5,997,827.20 award, in which Landmark addressed its response to Amerisure's request for the award [D.E. 339]. The District Court was fully apprised of the issue and denied Landmark's Motion.[2] In addition, in Amerisure and Arch's subsequently-

---

[2] Further, Landmark's reliance upon the District Court's statement, in D.E. 321, page 5, that ". . . all issues concerning Landmark have been decided" is

filed Joint Notice of Partial Resolution of Claims [D.E. 334], Amerisure and Arch specifically informed the District Court that "certain claims brought by and against [Landmark] are not resolved by the aforementioned settlement agreement and remain pending before this Court." [*Id.*, pp. 1-2.] Landmark's complaint that it was not heard on the issue rings hollow.

In the District Court, Arch alleged that as a surety and an indemnitee of Auchter it was entitled to recover from Landmark the amount of $5,997,827.20, which was awarded against Auchter in the *Arch* Indemnity Lawsuit for Arch's attorneys' fees and costs incurred in the defense of the Underlying Action. [D.E. 51, pp. 40-49]. In its initial disclosures, Arch specifically sought "recoupment of all amounts paid in satisfaction of the Final Judgment, including . . . Arch's attorney's fees, costs, and expenses incurred in defending the claims in the Underlying Action ($5,997,827.90)." [D.E. 340-2, p. 18]. This was included in Arch's Cross-Claim [D.E. 51, p. 18], and in the March 2019 joint status report filed by the parties [D.E. 296, p. 8], as well. In its filings, Arch made clear that it sought these amounts from Landmark under the "Supplementary Payments" provision of the Landmark Policies, and that Landmark owed such defense fees irrespective of whether the policies were exhausted because such amounts "will not reduce the limits

---

insincere as the District Court subsequently addressed the issues regarding the $5,997,827.20 award. This statement does not have binding effect.

of insurance." [D.E. 296, p. 8]. *See Southeast Atlantic Cargo Operations, Inc.*
*v. First State Insurance Co*., 216 Ga.App. 791, 793-94, 456 S.E.2d 101, 103-
04 (1995) (recognizing that amounts falling within the supplementary
payment provision of a policy are not subject to the limits of insurance); *Aetna*
*Casualty & Surety Co. v. The Protective National Insurance Company of*
*Omaha*, 631 So.2d 305, 309 (Fla. 3d DCA 1994) (same).

The amount sought in paragraph 2(e) of the Final Judgment is
consistent with this Court's Orders that Landmark owed a primary obligation
to defend and indemnify Auchter in connection with the Underlying Action,
in particular, the Window System award. [D.E. 216, 267, 292, 307 and 321].
An award for attorneys' fees and costs (Arch's defense fees and costs incurred
in the Underlying Action), as requested by Arch in its Cross-Claim against
Landmark, are recoverable under the Supplementary Payments provision of
the Landmark Policies following the entry of a predicate finding that the
insurer (Landmark) owes coverage under its policies for the amounts sought
in the Underlying Action – which the District Court made here. [D.E. 216,
267, 292, and 321]. *Mid-Continent Casualty Co. v. Treace*, 186 So.3d 11, 12
(Fla. 5th DCA 2015) (finding that insurer owes coverage for attorneys' fees
awarded against the insured under the Supplementary Payments provision of
the policy as "costs taxed against the insured"); *Geico General Insurance Co.*
*v. Rodriguez*, 155 So.3d 1163, 1172 (Fla. 3d DCA 2014) (concluding that "all

court costs" could be read to include attorneys' fees, especially since there was no definition of that term in the policy).  The $5,997,827.20 award to Amerisure, as assignee of Arch, is consistent with the District Court's Orders and the terms of the Landmark Policies.  As such, the $5,997,827.20 award should be affirmed.

Landmark also finds no refuge in *Alea London Limited v. American Home Services, Inc*., 638 F.3d 768 (11th Cir. 2007).  There, this Court addressed whether an award of opposing counsel's attorneys' fees were recoverable under the supplementary payment provision, which is not the issue here.  The $5,997,827.20 award here is for amounts that Arch incurred – as an indemnitee of Auchter – in the defense of the Underlying Action, and which it imposed on Auchter [Landmark's insured] in the Arch Lawsuit.  Moreover, Landmark's reliance on Georgia law is inappropriate where it has continuously argued for the application of Florida law.

The District Court entered an order on December 22, 2020 [D.E. 321] denying Landmark's motions for reconsideration [D.E. 308, and 309], and finding that Landmark owed, in connection with the Window System award, its $2 million policy limits as the primary insurer for Auchter. [D.E. 321, pp. 3-5].  The Court also required Amerisure and Arch to submit a proposed final judgment to address any remaining issues. [*Id.*, p. 6.]  Following the entry of that Order, on May 20, 2021, Amerisure and Arch filed their notice of partial

resolution of claims, and reached a settlement, whereby Arch assigned its remaining claims against Landmark to Amerisure. [D.E. 334]. Amerisure and Arch then filed a motion for substitution of parties wherein Amerisure requested permission to replace Arch, as an assignee of Auchter, for the purpose of seeking relief against Landmark. The inclusion of the requested relief in paragraph 2(d) of the proposed final judgment was consistent with the District Court's predicate coverage determinations against Landmark and its Order requiring Amerisure and Arch to submit a proposed final judgment to address and resolve any remaining issues in this Action. Landmark has been aware of the claims at issue, has conducted both written and oral discovery of Arch's claims, filed a myriad of motions, and has had ample opportunity to explore any and all claims made against it. The $5,997,827.20 amount has been at issue since the inception of this Action. Landmark's claim to the contrary is undermined by the facts and its conduct.

Finally, as Landmark was found to have owed and breached its obligations to Auchter, an award of interest against Landmark was proper. Amerisure requested the award consistent with numerous Orders of the District Court [D.E. 267, 292, 307 and 321]. Landmark offers nothing but rank speculation in seeking to contest the District Court's award of interest on amounts owed on account of its breach of its obligations to Auchter. The interest award in the Final Judgment should be upheld.

**V.    The District Court Properly Held That Amerisure is Entitled to Attorneys' Fees and Costs**

As the prevailing party, individually and as assignee of Arch, Amerisure is entitled to recover attorneys' fees and costs incurred in this Action pursuant to Florida Statute § 627.428 and Florida Statute § 786.79. The District Court's determination that Amerisure is entitled to recover its attorneys' fees incurred in this Action should be affirmed. [D.E. 342, pp. 5, 13; D.E. 343].

Section 627.428 permits recovery of legal fees incurred in challenging an insurer's wrongful denial of coverage, which Landmark has been found to have done in this case. *See* Fla. Stat. § 627.428 (allowing for recovery of attorneys' fees to a prevailing party after judgment against an insurer); *Vigilant Insurance Co. v. Continental Casualty Co.*, 33 So.3d 734, 737-38 (Fla. 4th DCA 2010) (observing that the insured, or the excess insurer standing in the shoes of the insured, is damaged because it paid money that it should not have been required to pay, absent the primary insurer's bad faith).

The right to statutory attorneys' fees is applicable to federal courts sitting in Florida. *All Underwriters v. Weisberg*, 222 F.3d 1309, 1311, fn. 5 (11th Cir. 2000). Landmark's main contention is that the statute should not be applied because the Landmark policies were issued in Georgia, and Georgia law does not have a similar fee statute. [Landmark Brief, p. 65.]

Landmark's argument is unavailing. Landmark ignores that this Circuit qualifies matters under Fla. Stat. § 627.428 as procedural. *See Blasser Bros. v. Northern Pan–American Line*, 628 F.2d 376, 386 (5th Cir. 1980) ("The applicable statute, however, is a procedural one, and the parties must satisfy the statutory requirements."); *Fidelity–Phoenix Fire Insurance Co. of New York v. Cortez Cigar Co.*, 92 F.2d 882, 885 (5th Cir. 1937) ("This statute is plainly a procedural one limited to the courts of Florida."). This Court also has consistently held that "this right to attorneys' fees is applicable in federal courts sitting in Florida." *Blasser Bros.,* 628 F. 2d at 386; *see also In Re: 3M Combat Arms Earplug Products Liability Litigation*, 2021 WL 1269173 (N.D. Fla. Aug. 8, 2021) (finding that § 627.428 is plainly a procedural statute, which is confined to Florida and litigation pending in Florida). Accordingly, as this Action is pending in Florida, Amerisure is entitled to recover prevailing party fees under § 627.428. The District Court's ruling on this issue should be affirmed.

The cases cited by Landmark address the issue of whether § 627.428 is substantive law for *Erie* purposes to determine whether it conflicts with Federal law, which is not an issue here. Landmark's position that Georgia law should apply because the statute conflicts with Florida law was not addressed in any of the cases cited in its brief. And, this position is belied by Landmark's continued reliance on Florida law to address its policy provisions

and the scope of coverage under the Landmark Policies. Landmark's position is fundamentally flawed.

Additionally, Landmark errs with respect to the application of Fla. Stat. § 786.79. Amerisure is entitled to relief under Fla. Stat. § 786.79 on the basis that Amerisure served an Offer of Judgment on Landmark in an effort to resolve this matter at an early stage in the case. [D.E. 178]. Landmark never responded to the Offer of Judgment. Fla. Stat. § 786.79. Florida's Offer of Judgment statute, § 768.79, and the rule implementing it, Fla. R. Civ. P. 1.442, apply in diversity cases where the substantive law of Florida applies. *Menchise v. Akerman Senterfitt*, 532 F.3d 1146, 1150 (11th Cir. 2008) (internal citation omitted). Alternatively, Amerisure is entitled to recover attorneys' fees and costs under § 768.79.

Additionally, Fed. R. Civ. P. 54 (d)(1) creates a presumption that a prevailing party may recover reasonable and necessary litigation costs from the losing party. 28 U.S.C. § 1920; *Arcadia Fertilizer, L.P. v. MPW Industrial Services, Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001). As the prevailing party, Amerisure is entitled to an award of costs of $11,942.28. [D.E. 344-7]. The District Court's award of fees and costs to Amerisure should be affirmed.

## CONCLUSION

For the reasons set forth herein, the Final Judgment entered against

Landmark should be affirmed.

Respectfully submitted,

By:   /s/ *Donald E. Elder*

Attorney for Amerisure Insurance Company
and Amerisure Mutual Insurance Company

Donald E. Elder (Illinois Bar # 6255889)
Brett L. Warning (Illinois Bar # 6199057)
Anthony N. Balice (Illinois Bar # 6271902)
Emerson & Elder, P.C.
53 West Jackson Blvd., Suite 526
Chicago, IL 60604
dee@emersonelder.com
brett@emersonelder.com
tony@emersonelder.com
Facsimile: (312) 265-1603
Telephone: (312) 520-2502

By:   /s/ *Andrew F. Russo*

Andrew F. Russo, FBN 508594
Rywant, Alvarez, Jones, Russo
& Guyton, P.A.
302 Knights Run, Suite 1000
Tampa, Florida 33602
(813) 229-7007 (Telephone)
(813) 223-6544 (Facsimile)
arusso@ywantalvarez.com

*Attorney for Amerisure Insurance Company*
*and Amerisure Mutual Insurance Company*

57

## <u>Certificate of Compliance</u>

1. This document complies with [the type-volume limit of FRAP 32(a)(4)(5).

   ✓ this document contains 12,974 words, or
   ☐ this brief uses a monospaced typeface and contains [state the number of] lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

   ✓ this document has been prepared in a proportionally spaced typeface using MS Word in 14 font size and Times New Roman type style, or

   ☐ this document has been prepared in a monospaced typeface using [state name and version of word-processing program] with [state number of characters per inch and name of type style].

By: *<u>/s/ **Donald E. Elder**</u>*

*Amerisure Insurance Company*
*and Amerisure Mutual Insurance Company*

DATED: 24th day of April, 2023.

58

## Certificate of Service

I hereby certify that on April 24, 2023, the foregoing document is being served this day on all parties who have appeared through the Court's CM/ECF system.

By:  /s/ *Donald E. Elder*

Attorney for Amerisure Insurance Company
and Amerisure Mutual Insurance Company

Donald E. Elder (Illinois Bar # 6255889)
Emerson & Elder, P.C.
53 West Jackson Blvd., Suite 526
Chicago, IL 60604
dee@emersonelder.com
Tel: (312) 520-2502

*Attorney for Amerisure Insurance Company*
*and Amerisure Mutual Insurance Company*